635 So.2d 643 (1994)
Richard CASTILLE, Plaintiff-Appellee,
v.
LEESVILLE LUMBER COMPANY, et al., Defendant-Appellant.
No. 93-1091.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
*644 Edward Allan Kaplan, Alexandria, for Richard J. Castille.
Terri Maderson Collins, Baton Rouge, for Leesville Lumber Company.
Before GUIDRY and LABORDE, JJ., and CULPEPPER,[1] J. Pro Tem.
LABORDE, Judge.
The question is whether an employee unknowingly predisposed to disability by a rare medical condition can, after four years of working on the job without complaint, recover workers compensation benefits for objective symptoms arising suddenly from an identifiable event. We answer affirmatively, and affirm on this basis. Nonetheless, owing solely to the close legal question presented, we reverse the hearing officer's award of penalties and attorney fees.

FACTS
Plaintiff worked for defendant Leesville Lumber Company from August 1987 until he became disabled four years later. At trial, his employer's representative testified that he noticed no degeneration in plaintiff's condition or ability to perform prior to August 13, 1991, the date of injury. Plaintiff and witnesses familiar with his condition testified under oath that the conditions of plaintiff's hands and feet, each bearing abnormally thick callouses, although not disabling, had deteriorated over a period of approximately two to four years.
This dispute concerns termination of plaintiff's workers compensation benefits after plaintiff's underlying condition and job conspired to render him disabled on August 13, 1991, when a fissure on plaintiff's right hand suddenly erupted while he was handling lumber at work.
Due to this and other less serious injuries, plaintiff was referred by his employer to Dr. Gregory Lord, who in turn referred the injured employee to Dr. Frank Ingrish, an Alexandria dermatologist. It was Dr. Ingrish who ordered plaintiff to refrain from hard labor, on September 26, after he became convinced that his prescribed conservative treatments were of no moment. At trial, Dr. Ingrish's deposition transcript and medical reports were introduced. Both suggested that plaintiff's disability was attributable to the chronic pressure which accompanies the handling of lumber.
Dr. Ingrish, who was to continue seeing plaintiff even after defendants terminated payment of medical expenses, recommended that plaintiff see orthopedic surgeon L. Donovan Perdue for the nascent clawing symptoms of his hand and podiatrist Geoffrey Bergman for the advancing debilitative condition of his feet.
Unlike Dr. Ingrish, Dr. Perdue concluded that plaintiff's disability was probably hereditary. Dr. Perdue indicated that although he would ordinarily yield to a dermatologist's opinion as to causation of a skin malady, his experience in this case compelled him to differ from that of Dr. Ingrish, for whom he expressed professional respect. Dr. Perdue further offered his opinions that plaintiff's conditions were frequently inherited, although there was little evidence of family history to support or reject this theory in the plaintiff's case, and that working on one's feet at a lumber yard would not exacerbate the condition of plaintiff's feet any more than if he stood on his feet elsewhere. Dr. Perdue only saw plaintiff on the one occasion for which defendants agreed to pay without further authorization, October 30, 1991.
Doctor Bergman saw plaintiff on several occasions, from December 19, 1991, to August 1992, after which he refused to see plaintiff due to defendants' refusal to pay an outstanding balance of $235.00 for five office visits dating back to February. Dr. Bergman concluded that claimant's predisposition to the lesions was congenital, but that it was the cumulative effect over the years of long standing that was the big contributing factor leading to foot problems. According to the podiatrist, had plaintiff's position been sedentary in nature, it would be "doubtful" that *645 the inflammatory process would have led to his disability.
Defendants secured the services of a second dermatologist, Christopher Hubbell of Baton Rouge, to conduct an independent medical examination. Dr. Hubbell saw Mr. Castille on one occasion, on May 8, 1992. On defendants' examination, Dr. Hubbell's testimony to cause vacillated, no doubt due at least in part to his admitted impression that plaintiff's case was difficult to diagnose.[2] On examination by plaintiff counsel, Dr. Hubbell's testimony was less equivocal. His impression was that Mr. Castille had a genetic predisposition to the underlying medical condition, but that although it was hard to say whether the job brought on the condition, it "certainly" played a role in aggravating and augmenting it.
Dr. Hubbell's September 16, 1992, testimony further indicated that treatments, in concert with Mr. Castille's not working and not standing for long periods, could be of assistance, but that a biopsy should be considered, possibly to diagnose the etiology of claimant's ailment, certainly to rule out such occupational hazards as arsenic poisoning (which, according to the independent expert, was "within the realm of consideration," even without the worker's knowledge of exposure).
Taken in toto, there is no question that plaintiff was particularly prone to the rare disability which commenced August 13, 1991. Nor is there any question that symptoms of what would eventually be transformed into a disability had begun to appear prior to August 13, 1991.[3] Finally, there is no question that Mr. Castille adequately performed in a position entailing prolonged standing and constant hand lifting for four years prior to becoming disabled. The legal conclusions which follow flow from these findings.

APPELLATE POSTURE
This controversy arose after defendants discontinued paying plaintiff workers compensation benefits in January of the following year.
Defendants appeal from the hearing officer's finding that this four year employee of Leesville Lumber became temporarily totally disabled on August 19, 1991, when his turning lumber on the job rendered disabling his hyperkeratotic condition. Reversal is also sought against the penalties and attorney fees imposed by the hearing officer for defendants' January 21, 1992, termination of benefits. Alternatively, defendants seek to have the record reopened to have introduced into evidence a medical report it claims would dispositively show that the hyperkeratosis suffered by claimant, being hereditary in nature, is not compensable.
In response to these arguments, plaintiff argues that at a minimum the hearing officer committed no manifest error. He also filed the requisite Answer to Appeal seeking additional attorney fees for this appeal.

MERITS
We quote at length the eight express findings made by the hearing officer:
1. The plaintiff, RICHARD CASTILLE, suffers from hyperkeratosis, a preexisting condition which was not disabling before August 19, 1991.
2. Plaintiff sustained an accident within the course and scope of his employment on August 19, 1992 when his right hand cracked open while turning lumber, within the course and scope of his employment with defendant, LEESVILLE LUMBER COMPANY.
*646 3. The accident at work aggravated the preexisting condition to the extent that plaintiff became disabled on September 26, 1991.
4. A preponderance of the evidence does not indicate that plaintiff has been capable of returning to his former employment or working in other employment since September 26, 1991.
5. Plaintiff has remained temporarily totally disabled since benefits were terminated on January 21, 1992. Benefits should be reinstated, effective January 21, 1992.
6. Plaintiff is entitled to continuing medical treatment for the hyperkeratosis, effective back to the date medical benefits were terminated.
7. Plaintiff is also entitled to vocational evaluation and rehabilitation, if approved by his treating physicians, to ascertain his vocational abilities at this time.
8. The issues of causation and disability were not reasonably controverted. Statutory penalties are awarded in addition to attorney fees in the amount of $2,500.00.
Defendants urge us to reject the conclusions of the hearing officer on legal grounds, viz, that claimant's disability arises from a hereditary infliction, and not the type of singular event it argues is required by the legislature's most recent definitions of "injury" as defined by LSA-R.S. 23:1021(7)(a) or "accident" as provided in LSA-R.S. 23:1021(1). For these reasons, they argue that claimant is not legally qualified to receive workers compensation benefits under LSA-R.S. 23:1031A. Set forth in inverse order, these provisions read as follows:
§ 1031. Employee's right of action; joint employers, extent of liability
A. If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
LSA-R.S. 23:1031, as amended by Acts 1989, No. 454, Sec. 2, effective January 1, 1990.
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.

Amended by Acts 1989, No. 454, § 1, eff. Jan. 1, 1990.
* * * * * *
(7)(a) "Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement however caused or contracted.
As amended by Acts 1989 No. 454 Sec. 1, effective January 1, 1990 (Emphasis added).

"Accident"
Defendants first argue that because Mr. Castille's underlying condition was probably preexisting, he is not entitled to benefits. Citing Clement v. Fidelity & Casualty Company of New York, 220 So.2d 575 (La.App. 3d Cir.1969); Robichaux v. Terrebonne Parish School Board, 426 So.2d 241 (La.App. 1st Cir.1983); Morgan v. Lumbermen's Mutual Casualty Company, 317 So.2d 7 (La.App. 1st Cir.1975); and Norred v. Travelers Insurance Co., 236 So.2d 637 (La.App. 2d Cir. 1970), writ denied, 256 La. 842, 239 So.2d 354 (1970), they concede that prior to the January 1, 1990, effective date of the revised definition supplied above, plaintiff would be entitled to recover. Nonetheless, they claim that the amended definition of "accident" set forth above precludes recovery under LSA-R.S. 23:1031A, because his injury was simply a gradual deterioration or progressive degeneration.
We are not persuaded by defendants' claim, unaccompanied by supporting authority, that the revised definition of "accident" should alter the outcome of the present case.
While it is true that the definition of a compensable accident is now narrower than *647 it was previously,[4] the purpose and effect of the more constrictive language is to underscore the employer's immunity from disability costs unrelated to employment, not to preclude recovery for disabilities arising only in part from a latent defect or predisposition. In order to effectuate this end, LSA-R.S. 23:1021(1) requires that at time of injury there be an event producing objective signs of injury, rather than "simply" a gradual deterioration or progressive degeneration. The amendment does not effectuate the change contemplated by defendants. We reject the suggestion that the 1989 amendments to the legal definition of "accident" require us to leave by the wayside a claimant solely on the grounds that his underlying condition was exacerbated by work to become disabling, and not demonstrated to have arisen solely from the workplace.[5] "Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed," Connor v. Jones Bros. Enterprises, 606 So.2d 996, 1002 (La.App. 4th Cir.1992), writ denied, 612 So.2d 602 (La. 1993).
Finally, there is no reason to overturn the factual findings of the hearing officer. The primary factual questions raised at hearing concerned the extent to which plaintiff's underlying condition was hereditary in nature, and the extent to which his disability was work-related. The preponderance of medical and lay testimony at a minimum supports the view that plaintiff's disability did not arise "simply" from some underlying disease or inherited tendency, see LSA-R.S. 23:1021(1), a conclusion reached by the fact finder which was not clearly wrong. See, e.g., Bruno v. Harbert Intern. Inc., 593 So.2d 357, 360-361 (La.1992).; Cf. Quinones v. U.S.F. & G. and Harmony Construction Company, Inc., No. 93 C 1648, 630 So.2d 1303 (La.1994) (bare majority affirms appellate reversal on fact basis) (trial judge ignored all expert evidence; no lay evidence to logically show link between work injury and death from cirrhosis of liver).
Reviewed in proper context, we cannot say no "accident" occurred within the contemplation of LSA-R.S. 23:1021(1). Plaintiff worked continuously for four years and became disabled as a consequence of a sudden event, when on August 13, 1991, at a particular moment in time, a particular parcel of lumber he was handling caused his hand to rip open. The objective signs of his injury prompted him to seek immediate medical treatment. Each of the physicians who treated him soon after his injury concluded, based on objective evidence, that the injury was disabling and more than "simply" a manifestation of some inheritance.
Accordingly, the hearing officer's factual findings were not clearly wrong, and her legal conclusions, premised on those findings, constitute accurate applications of the law. An "accident" occurred August 13, 1991, which left plaintiff disabled.

"Injury"
As defendants correctly state, an employer is not liable in workers compensation unless an "injury" occurs within the contemplation of the workers compensation provisions of this state. LSA-R.S. 23:1031A. Nonetheless, we find no merit to their contentions that Mr. Castille suffered no "injury" falling within the definition of LSA-R.S. 23:1221(7)(a).
First, like the hearing officer, we are persuaded that the splitting of claimant's hand constituted "violence to the physical structure of the body" as intended by LSA-R.S. 23:1021(7)(a). Second, the compensation to which plaintiff is entitled is derived not from some "disease or derangement," see LSA-R.S. 23:1021(7)(a), supra, but from the debilitating wound plaintiff suffered on the job.

*648 Admission of Late Evidence/Motion for New Trial
Defendants claim the hearing officer abused her discretion in refusing to permit late introduction of a medical report by Dr. Ingrish dated October 15, 1992. They claim that the medical report mysteriously appeared in their attorney's office November 18, 1992, just before the deadline of their posttrial memorandum.
We find no legal merit to these claims. First, according to defendants, Dr. Ingrish was the only witness to indicate that claimant's underlying condition was not hereditary, and this assertion was retracted by the last minute medical report for which they seek consideration. The proffered report consists of but a few sentences and merely suggests, as we have found, that Mr. Castille's disability might have resulted from a combination of work and predisposition. It does not indicate that Mr. Castille's disability was wholly unrelated to work.
Most importantly, however, the differences defendants have articulated derive from legal differences of opinion, not factual ones. Even taking the report into account, the outcome would be no different, because we refuse to accept the very narrow legal interpretations espoused by defendants. Consequently, even if we were to conclude that the hearing officer erred in refusing introduction of the report, her error was harmless.

Statutory Penalties and Attorney Fees
Our final question concerns whether penalties and attorney fees were properly awarded.
Different standards govern whether the two remedies are applicable. An employer or insurer is liable for statutory penalties when it withholds benefits without evidence to reasonably controvert an employee's right to compensation and medical benefits. LSA-R.S. 23:1201E. On the other hand, attorney fees are recoverable if the employer or insurer acts arbitrarily, capriciously or without probable cause in refusing to pay or terminating benefits. LSA-R.S. 23:1201.2.[6]
In order to determine whether an employer has reasonably controverted an employee's right to such benefits, the test for workplace accidents arising since July 1, 1983, has been: given the facts, medical and otherwise, known to the employer or its insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Breaux v. Travelers Ins. Co., 526 So.2d 284, 291 (La.App. 3d Cir.1988), quoting Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 366-367 (La.App. 3d Cir.1985).[7] In this case, we conclude that defendants' arguments as to the hearing officer's award of penalties has merit, as the principal issue decided today is "novel," insofar as it apparently has not been conclusively resolved under existing law before or since plaintiff's claim was made. See, e.g. Williams v. Regional Transit Authority, 546 So.2d 150, 161-162 (La.1989). In light of the recent amendments to our state's workers compensation scheme, this proceeding concerned significant legal questions and defendants' arguments were not frivolous.
Finally, we examine the question of attorney fees. Employers have often been absolved of attorney fee sanctions where the question of whether an employee is disabled is a close one. Williams, supra; Lay v. Non-Mag, Inc., 556 So.2d 1341, 1342-43 (La. App. 3d Cir.1990); Robertson v. Employer's Cas. Co., 546 So.2d 263, 267 (La.App. 1st Cir.1989); Campbell v. Luke Const. Co., 543 So.2d 1032 (La.App. 3d Cir.1989). After thoughtful consideration of the question, we conclude that attorney fees are not appropriate in this case.

*649 Decree
For the reasons stated above, plaintiff is entitled to benefits, but not to penalties or attorney fees. Defendants to pay costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Judge William Culpepper, retired, participated in this decision as Judge Pro Tempore by appointment of the Supreme Court of our state.
[2] At one point, the practitioner of one year stated that he was inclined to agree with Dr. Perdue that there was a familial predisposition that led to plaintiff's underlying condition, at another, that it could be either hereditary or acquired, and at still another, that claimant's was probably hereditary.
[3] According to Dr. Ingrish, plaintiff stated that the condition in his hand had begun deteriorating some two years prior to his disabling injury. Although he did not try to determine exactly how long, Dr. Perdue was informed by plaintiff that his hands had been accompanied by pain for a period of time. Podiatrist Bergman indicated that plaintiff's reported history suggests foot pains for several years, with particularly pronounced deterioration the last few months during which his job's requirement that he stand continuously on hard surfaces led to a virtual inability to tolerate walking. Dr. Hubbell suggests that in May 1992 he was informed that plaintiff's hand and foot problems had been present four or five years.
[4] The definition previously read as follows:

(1) "Accident" means an unexpected or unforeseen event happening suddenly or violently, with or without human fault, and producing at the time objective symptoms of an injury.
[5] In other words, we respectfully disagree with the seemingly universal postulate expressed in dicta by the Fourth Circuit recently in Lemoine v. Schwegmann Giant Supermarkets, 607 So.2d 708, 712 at n. 1 (La.App. 4th Cir.), writ denied, 609 So.2d 258 (La.1992). We do not believe that the 1989 Amendments require such a draconian meat cleaver approach.
[6] This has not always been the case. LSA-R.S. 23:1201.2(A), in force prior to the 1983 amendments to our state's workers compensation laws, required the same showing for penalties or attorney fees, viz., an employer's being found "arbitrary, capricious, or without probable cause" in discontinuing benefits. Acts 1958, No. 432, Section 1. It was not until LSA-R.S. 23:1201 and 1201.2 were amended by Acts 1983, 1st Ex.Sess., No. 1, Section 1, effective July 1, 1983, that contrasting standards were established for the two.
[7] By "controvert" is meant "to dispute; to deny; to oppose or contest; to take issue on." Breaux, supra, citing Black's Law Dictionary 298 (5th ed. 1979).