640 So.2d 769 (1994)
George Paul PICKETT, Plaintiff-Appellant,
v.
STINE LUMBER COMPANY, Defendant-Appellee.
No. 93-1534.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
*770 Thomas Allen Filo, Lake Charles, for George Paul Pickett.
Skipper Maurice Drost, Sulphur, for Stine Lumber Co.
Before DOUCET, LABORDE, JJ., and BERTRAND,[1] J. Pro Tem.
LABORDE, Judge.
In this workers compensation proceeding, a worker appeals the hearing officer's conclusion that injuries he sustained on the job May 25, 1992, two years after he was hired, did not arise in the course and scope of his employment.
We affirm in part, vacate in part, and remand. Claimant is entitled to the medical testing requested by the medical experts testifying for both parties. See Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993) and Johnson v. Ins. Co. of N. America, 454 So.2d 1113, 1119 (La.1984).

FACTS
Plaintiff-employee, a heavy manual laborer, claims to have been injured in the course and scope of his employment when the forklift he was driving hit a pothole, causing persistent debilitating pains. Shortly after his accident, when those pains did not subside, claimant was seen by several general practitioners of medicine, each of whom prescribed a conservative course of treatment and reduction to light duty.
No relief forthcoming, claimant scheduled an appointment with another doctor, Dr. Moore. While he waited for that appointment to come up, claimant's employer recommended that he see another physician, Dr. Bonilla. According to claimant, he and the company doctor did not get along so well. He believed Dr. Bonilla's August 25, 1992, medical discharge resulted from their bad relations.[2] Dr. Bonilla's discharge forms the basis of defendant's refusal to pay workers compensation benefits. Dr. Bonilla provided no medical report to elucidate his findings. He only filled out a return to work slip.
Claimant kept the appointment previously scheduled with Dr. Moore. The first time Dr. Moore saw claimant was October 15, 1992. Dr. Moore prescribed a battery of tests to diagnose the cause of claimant's continuing pains. When these tests ruled out disc troubles, Dr. Moore became suspicious that claimant's continuing complaints of pain were the result of thoracic outlet syndrome. By November 13, 1992, if not before, Dr. Moore noted that claimant was totally disabled from working and would be for an indeterminate period of time. (Apparently, Dr. Moore's findings were passed along to defendant's trial counsel and delayed in their retransmission to defendant's adjuster.) To explore this possibility, Dr. Moore referred claimant to Dr. Kober, a thoracic surgeon. Dr. Kober saw claimant June 28, 1993, and performed additional tests, which he believed corroborated Dr. Moore's diagnosis of thoracic outlet syndrome from what he described as mostly objective symptoms. He concluded that claimant was totally disabled.
After becoming aware that Drs. Moore and Kober examined claimant,[3] defendant's adjuster *771 referred claimant to Dr. Seale, also a thoracic surgeon, for an independent medical examination. Unlike Drs. Moore and Kober, Dr. Seale thought claimant suffered from carpal tunnel syndrome, a disease he believed could not be attributed to the forklift accident. Dr. Seale could not be completely certain of his conclusion. His medical report offered in lieu of testimony specifically stated that a nerve conduction study "would be very useful in determining the absence or presence of a carpal tunnel."
Dr. Kober could not rule out carpal tunnel syndrome in addition to thoracic outlet syndrome.

FORFEITURE
The employee admits to having falsely stated in his job application to never having previously sustained an on-the-job injury. Claimant candidly admits that he did so because his previous admissions of such injuries had ruined his earlier efforts to find a job.
The hearing officer properly concluded that Plaintiff's failure to admit his previous injuries does not bar his recovery of compensation benefits due to the form of the job application provided him by his employer. LSA-R.S. 23:1208.1 provides as follows:
§ 1208.1. Employer's inquiry into employee's previous injury claims; forfeiture of benefits
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
Added by Acts 1988, No. 938, § 2, eff. Jan. 1, 1989. Amended by Acts 1989, No. 454, § 5, eff. Jan. 1, 1990.
The tension wrought between the first and second sentences of LSA-R.S. 23:1208.1 is reflective of society's need to balance the employer's desire to avoid nonproduction attributable costs against the worker's need to exchange for the practical necessities of life the only commodities he has to offer in a competitive labor market, his time and labor. See generally, Malone & Johnson, Workers' Compensation, 13 Louisiana Civil Law Treatise, Sections 32 and 232 n. 1 (and text accompanying) (West 1993).
Consistent with "the tenet that the worker's compensation laws are to be liberally construed," Peveto v. WHC Contractors, et al., 93-C-1402 (La. 1/14/94), at 3, 630 So.2d 689, 691, the provision is strictly construed against the employer, who is presumed to be in a better position to prevent workplace accidents through its hiring and firing decisions than is the worker, who seldom has the luxury of opting out of the workplace.
While LSA-R.S. 23:1208.1 is designed to insulate the employer from costs arising from worker's ailments which are completely foreign to their production of goods or services, it does so only when those costs are clearly not attributable to the worker's occupation and the employer avails itself of the provision's safe harbor provisions. Williams v. Holly Hill Nursing Home, 93-557 (La.App. *772 3d Cir.1994), 640 So.2d 383. Cf. Carter v. Our Lady of Lake Regional Medical Center, 612 So.2d 805 (La.App. 1st Cir.1992).
Because defendant conceded that it did not comport to the minimum notice requirements set forth in LSA-R.S. 23:1208.1, the hearing officer correctly concluded that claimant's omissions in his job application were not determinative. The case had to be decided on the merits.

MERITS
Three things are certain. First, defendant terminated claimant's benefits solely on the basis of Dr. Bonilla's discharge slip. Second, claimant's treating physicians were more familiar with claimant's condition and concluded that claimant was disabled from thoracic outlet syndrome. Third, Dr. Seale's conclusion that claimant's injury was not job-related rested in part on incomplete diagnostic testing.

Temporary Total Disability
As a rule, the employee in a workers compensation action has the burden of establishing a causal link between the accident and the subsequent disabling condition. Walton v. Normandy Village Homes Ass'n, 475 So.2d 320, 324 (La.1985). A worker who seeks benefits for temporary total disability bears the burden of proving such disability by clear and convincing evidence. LSA-R.S. 23:1221(1)(c).
Certain rules of interpretation have evolved over the years to assist courts in making that determination. If the disabled employee can further show that he was not disabled before the accident, it then becomes incumbent upon the employer to produce evidence to persuade the trier of fact that it is more probable than not that the work injury did not aggravate, accelerate or combine with his preexisting infirmity to produce his disability. See Peveto, supra; Walton, supra, at 324-325 and cites therein; Castille v. Leesville Lumber Co., et al. (La.App. 3d Cir. 4/6/94), 635 So.2d 643; Connor v. Jones Bros. Enterprises, 606 So.2d 996, 1002 (La.App. 4th Cir.1992), writ denied, 612 So.2d 62 (La. 1993). In the case sub judice, claimant clearly was not disabled before the forklift accident.[4] The only significant questions which remained at trial were whether claimant was in fact disabled and, if so, whether the disability was attributable to his employment.
Generally, the task of evaluating the relative weight of expert testimony resides with the trier of fact. Lirette v. State (Farm Ins. Co., 563 So.2d 850, 853 (La.1990). Nonetheless, such respect is to be accorded only where it is due.
Noting plaintiff's concealment of his previous injuries, the hearing officer ultimately sided with the opinion of Dr. Seale over that of Drs. Moore and Kober, concluding that claimant sustained carpal tunnel syndrome not arising from his employment. The hearing officer's conclusion turned on Dr. Seale's finding that claimant was afflicted with carpal tunnel syndrome and not thoracic outlet syndrome as believed by Drs. Moore and Kober. We reverse this portion of the judgment, as it relied on the testimony of a physician who, due to defendant's refusal to pay for necessary medical examinations, admitted to having an imperfect picture of claimant's precise condition.
Both thoracic specialists, Seale and Kober, were of the opinion that nerve conduction studies would be very useful in ruling in or out carpal tunnel syndrome. These tests have never been performed, and should have been, even if claimant were able to return to light duty work. See Augustine v. Paul Wall Truck Line, Inc., 603 So.2d 770, 776 (La.App. 3d Cir.), writ denied, 608 So.2d 193 (La.1992).[5] *773 Moreover, as was the case in the Supreme Court case of Bailey v. Smelser, 620 So.2d 277, 281 (La.1993):
This case was prematurely tried on the issue of disability prior to completion of reasonable medical examinations, evaluation and treatment of the plaintiff. The hearing officer should have ordered the defendants to pay for such evaluation and treatment before proceeding with the trial on the merits.
....
Consequently, we vacate the disability determination of the hearing officer.

Occupational Disease
Additionally, our review of the hearing officer's reasons and of the record leaves the unmistakable impression that the hearing officer did not consider whether claimant's ailment constituted a compensable occupational disease. The hearing officer simply concluded that plaintiff could not recover for carpal tunnel syndrome because his affliction could not be connected solely to an identifiable event, the forklift accident.
A claimant whose prior condition becomes disabling due to his employment is not limited to relief under LSA-R.S. 23:1031's provisions governing on-the-job-accidents. Relief may be warranted under LSA-R.S. 23:1031.1, the provision called into service when an employee claims a disability due to an occupational disease. Referring to that provision, claimant could conceivably be entitled to temporary total disability benefits even if Dr. Seale correctly diagnosed carpal tunnel syndrome.
The determination of whether a claimant is disabled is a legal rather than a purely medical determination. DeGruy v. Pala, Inc., 525 So.2d 1124, 1133 (La.App. 1st Cir.), writ denied, 530 So.2d 568 (La.1988). In the case sub judice, Dr. Seale's diagnosis of carpal tunnel syndrome was not alone dispositive of the question of claimant's entitlement. First, Dr. Kober thought claimant might have carpal tunnel syndrome in addition to thoracic outlet syndrome. Second, in this state, the law states that a worker may recover benefits regardless of whether he becomes disabled suddenly, LSA-R.S. 23:1031, or becomes incrementally disabled by an occupational disease. LSA-R.S. 23:1031.1.
Carpal tunnel syndrome is an explicitly compensable occupational disease, LSA-R.S. 23:1031.1(B), which can be compensable even if not directly tied to a sudden, identifiable event. Hanlon v. Sline Indus. Painters, Inc., 358 So.2d 700 (La.App. 3d Cir.), writ denied, 360 So.2d 1177 (La.1978) (result correct). Thus, claimant could be entitled to relief if he suffers from a debilitating occupational disease, even if it cannot be tied exclusively to the forklift accident.[6]

Disposition
When an injured manual laborer is disabled at time of trial from performing physical labor and is still undergoing medical testing and treatment with an indefinite recovery period, he is entitled to benefits of temporary total disability. See Brewster v. Manville Forest Products Corp., 469 So.2d 340, 346 (La.App. 2d Cir.1985). See also Thomas v. Elder Pallet & Lumber Sales, Inc., 493 So.2d 1267 (La.App. 3d Cir.), writ denied, 497 So.2d 312 (La.1986).
Although claimant is certainly still undergoing medical testing and treatment, without additional testing, we are in no better position than was the hearing officer to conclude whether claimant's injury is related to his employment and therefore compensable. Should further diagnostic evaluation lead the *774 hearing officer to conclude as such, claimant shall be entitled to temporary total disability benefits until claimant is discharged from treatment by his treating physician, Tassin v. Cigna Ins. Co., 583 So.2d 1222, 1225 (La. App. 3d Cir.1991); or after rehabilitation, should it prove necessary. Federal Rural Elec. v. Simmons, 568 So.2d 644, 650 (La. App. 3d Cir.), writ denied, 571 So.2d 655 (La.1990).
Moreover, should the diagnostic testing not demonstrate that the forklift accident caused claimant's disability, or aggravated, accelerated or combined with a preexisting infirmity to produce the disability, then, assuming claimant supplements his petition,[7] the hearing officer is to consider the separate question of whether plaintiff's disability arose from a compensable occupational disease. See, e.g., Carter v. Avondale Shipyards, Inc., 415 So.2d 174, 177, 180-181 & n. 2 (La.1982) (on rehearing).
Plaintiff did not assign as error the hearing officer's failure to award penalties and attorney fees, so we will not consider the issue.

Decree
In the interest of justice, we will remand this matter for nerve conduction studies and Adson's Military Brace Maneuvers.[8] LSA-CCP art. 2164; Robinson v. Fidelity & Casualty Co. of New York, 181 So.2d 318, 320-321 (La.App. 3d Cir.1965). In the discretion of the hearing officer, these tests shall be performed by Doctors Seale and Kober, and/or another specialist of her choosing. See Latiolais v. Jernigan Bros., Inc., 520 So.2d 1126, 1129 (La.App. 3d Cir.1987).
Defendant is to pay for the costs of these assessment tools, as well as the costs of any outstanding diagnostic tests associated with these proceedings to date.
After reviewing the medical reports, the hearing officer is directed to make a de novo determination of whether plaintiff's claim is legally compensable.
Assessment of the costs not specified in this pronouncement to await the outcome of these proceedings.
AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
NOTES
[1] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision as Judge Pro Tempore by appointment of the Louisiana Supreme Court.
[2] Claimant was fired when he did not return to work. He maintains that he was not informed of Dr. Bonilla's medically discharging him to employment.
[3] Adjuster Rob Golus, who took over the file from a departing adjuster in August 1992, conceded that claimant's benefits were terminated exclusively on the basis of Dr. Bonilla's certificate to return to full duty work, which was faxed to him by the employer. Until then, according to the adjuster, plaintiff had been placed on light duty status by a Dr. Taylor, who convinced the adjuster that claimant had suffered an on-the-job injury.

The adjuster said their termination of benefits was in no way inconsistent with their subsequent approval of claimant's request to see an orthopedic doctor or a neurosurgeon, but nonetheless terminated claimant.
On March 10, 1993, defendant's adjuster received a telephone call from Dr. Moore's office to advise that claimant's treatments were ongoing and that authorization was sought for a referral to Dr. Kober. He further stated that as of the date of his deposition taken for trial purposes (June 20, 1993), he had no idea whether Dr. Moore was of the opinion that claimant could not return to work, and did not know that Dr. Moore had diagnosed thoracic outlet syndrome (nor that it concerned the front of the upper torso, not the back).
Due to a breakdown in communications between himself and trial counsel, defendant never learned of Dr. Moore's diagnosis of thoracic outlet syndrome and never authorized Dr. Kober's evaluation and treatment of the claimant. (It is unclear how long before March 10, 1993, if ever, defendant became imputed (through its adjuster or attorney) with knowledge of Dr. Moore's diagnosis, nor when defendant was apprised of Dr. Kober's diagnosis.) Defendant did, however, pay for the IME it scheduled with Dr. Seale.
[4] Although claimant might or might not have missed a few weeks of work in 1987, five years before, due to soft tissue injuries, the record contains no evidence which suggests that claimant was disabled even partially on the day of his employment, let alone the date of his injury in 1992, two years after he became employed. To the contrary, claimant's preaccident medical reports which were placed into evidence revealed that claimant previously had not sustained a permanent back injury, carpal tunnel syndrome, or thoracic outlet syndrome.
[5] In Augustine, we were confronted with a case in which one physician saw claimant only once or twice and concluded from purely subjective complaints that claimant was permanently totally disabled. We reversed the decision, noting the inability of specialists to find objective evidence to substantiate plaintiff's subjective complaints, and the opinion of the treating specialist that claimant could return to light duty status.

In the case sub judice, we have a treating generalist whose subjective findings are corroborated by the objective findings of a treating specialist who believed claimant is in fact disabled.
[6] Moreover, because claimant's symptoms arose more than twelve months after he commenced employment, we further observe that there is no presumption that his disability is not attributable to his job; therefore there is no need for him to exculpate himself by an overwhelming preponderance of the evidence. LSA-R.S. 23:1031.1; Carter, supra. Cf. Calais v. Louis Ortis Boat Co., 440 So.2d 970 (La.App. 3d Cir.1983), writ denied, 444 So.2d 1223 (La.1984). Also, see generally, Malone & Johnson, Workers' Compensation, Louisiana Civil Law Treatise, Sections 222-223 (West Supp.1993) and cases cited therein.
[7] On remand, claimant is granted leave to amend his pleadings to assert an alternative claim for recovery for an occupational disease. Whitworth v. Kaiser Aluminum & Chemical Corp., 135 So.2d 584 (La.App. 4th Cir.1961); see LSA-R.S. 23:1031.1 E.
[8] While the Adson's Military Brace Maneuvers performed by Dr. Kober yielded what in his view were objective symptoms of thoracic outlet syndrome, the record does not disclose whether such tests were performed by Dr. Seale.