11 JAMES C. GULOTTA, Judge Pro Tem.
In this workers’ compensation case, defendant appeals from a Judgment awarding to plaintiff supplemental earnings benefits,'penalties and attorney’s fees, future medical treatment, and payment of certain experts’ fees. We affirm.
It is undisputed that on February 8, 1993, plaintiff was injured in a work related accident while employed as a painter for Fred’s Painting Contractors. Specifically, she fell from a ladder onto a concrete surface. Plaintiff was paid $82.00 per week from February 8, 1993 through November 10, 1994, at which time benefits were terminated. On March 6, 1996, defendants made a supplemental payment to plaintiff in the amount of $5,006.58 representing a'payment for the period of February 8, 1993 through November 10, 1994, adjusting her compensation rate retroactively to $142.22 per week.
Plaintiff underwent treatment or examination by five (5) physicians. Dr. Norman Ott, an internist, was the first physician to examine plaintiff following the accident. According to his report, introduced into evidence, he concluded plaintiff had a lumbar and cervical strain, bilateral hip strain, and a contusion to the head. He recommended an orthopedic evaluation, MRI studies of the lumbar and cervical spines, and heat therapy.
The next physicians to examine and treat plaintiff were orthopedic surgeons Drs. John *152 Watermeier, John O’Keefe and Robert Steiner.
Dr. Steiner’s reports of plaintiffs visits were introduced into evidence. It is clear from these reports that he treated plaintiff from March 1993 through March 1996. Throughout this period he noted complaints of neck and low back pain, hip ache, hands falling asleep, “cramping up” in neck and arms, and tingling sensations in the back of the head. Based on his examinations and diagnostic studies, Dr. Steiner felt that regarding her lower back “she has no objective physical findings or diagnostic findings to explain her subjective lumbar complaints and she requires no further evaluation or treatment in the lumbar region.” Regarding her cervical spine complaints, Dr. Steiner was of the opinion that: “She has a left-sided disc herniation at C6-7. I recommended her surgical intervention (and her own doctor Dr. Watermeier has too). She has declined these recommendations repeatedly. She has reached maximum medical .improvement since she has declined the surgery. She requires no further orthopedic care. This patient may work in a sedentary type of job.”
In a deposition, Dr. Watermeier stated that he and Dr. O’Keefe (another doctor in his office) treated plaintiff from January 1994 through February 1996. They noted neck and lower back pain, as well as hand numbness. Dr. Watermeier diagnosed a cervical herniated disc and lumbar problems. He recommended surgery, a cervical collar, a lumbar brace for the lower back, and pain medication. Dr. Watermeier stated that if plaintiff had the recommended surgery, she would achieve approximately 90-95% relief of her symptoms, after a 3-6 month recovery period, and thereafter be able to resume light to medium work with the following permanent restrictions: no heavy manual labor, no lifting over 30-40 pounds, no overhead painting from a ladder. Absent the surgery, Watermeier believed plaintiff could do some type of sedentary or light duty work with substantially the same restrictions she would have, if she underwent surgery. He also found that she had reached maximum medical improvement with regard to her low back. Dr. UO’Keefe agreed with Dr. Steiner’s diagnosis of a cervical herniated disc, and he believed plaintiff would either be forced to tolerate the pain and live with medication or undergo surgery.
According to a report from Dr. Gerald Davis, introduced into evidence, he examined plaintiff in September 1996. He noted symptoms of neck pain, shoulder and arm pain, hand numbness and leg pain. Based on a clinical examination, Dr. Davis diagnosed a cervical herniated disc C6-7 with nerve entrapment. His impression was that plaintiff’s physical impairment would not allow her to return to manual labor. Dr. Steiner was of the opinion that “a total physical impairment of the body would be 75% of the body. With this physical impairment this patient would not be allowed to be returned to a light, medium, or heavy manual labor. She would not at this time be recommended for or allowed to return to sedentary work.” Dr. Davis recommended physical restrictions from lifting (over 15 pounds), repetitive bending, standing and climbing.
Plaintiff testified that while employed by Fred’s Painting and while descending from a ladder, she sustained an injury when she fell on a concrete surface. She testified further that the doctors who treated her recommended surgery for the herniated disks in her spine; however, she has repeatedly declined this surgery stating “I’m scared, first of all, and he couldn’t guaranty that I would get better or I would be paralyzed or what would actually take place with the surgery.” Plaintiff further testified that she suffers from pain most of the day and night if she does anything out of the ordinary. She added that she has not looked for any employment since the accident, and that the vocational rehabilitation counselors assigned to her did not provide her with specific information regarding prospective employers nor did they do any testing on her.
Bobby Roberts, a nationally certified vocational evaluation specialist, | testified at the trial of this matter. In July 1996 he evaluated plaintiff’s functional ability to work as well her interests. Based on tests performed, Roberts found that plaintiff would be able to perform semi-skilled activities and that her interests were in “service, business and out *153 door activities.” Roberts farther found plaintiff to be a bright person from an academic standpoint; however, she had problems doing sustained activity at a sedentary level for the following reasons: she had trouble flexing her head forward; and, she had recurrent numbness in her hands. Roberts concluded plaintiff was mot a candidate for work and he classified her as a medical/rehabilitation candidate. He explained the plaintiff would need further medical and/or therapy intervention to improve her functioning. Regarding the sedentary jobs found by the vocational counselors, Roberts did not believe plaintiff could perform any of them.
Crystal Younger, a licensed vocational rehabilitation counselor, was asked to review plaintiffs file for purposes of identifying employment and providing vocational rehabilitation services. Ms. Younger testified at trial that all of her attempts to contact plaintiff were unsuccessful. She explained that had plaintiff cooperated with her, she would have assisted her in finding employment by meeting with her regularly to find jobs and teaching her interviewing skills. She further testified she did not give plaintiff specific employer names and addresses, explaining that plaintiff did not meet with her. However, she did send general sedentary work information to plaintiff.
Jean Lillis, an associate of Ms. Younger’s, also testified. According to Lillis, she met plaintiff on one occasion at plaintiff’s doctor’s office to give her job leads they had found for her, but plaintiff refused to accept stating that because of pain, she did not feel she could work.
Susan Carazo, a rehabilitation counselor, testified that she met with plaintiff |5on two occasions. At the first meeting, she obtained plaintiff’s prior employment history. • She learned plaintiff had worked as a painter, laborer, dance instructor, receptionist, data entry clerk and switchboard operator. At the second meeting, Carazo met with plaintiff to discuss her physical therapy treatment. Based on a review of medical reports of Drs. Steiner, Watermeier, and O’Keefe, Carazo was of the opinion that plaintiff was capable of performing work. She testified that she had not performed any vocational testing on plaintiff.
Darren Evans, an employee of the Louisiana Worker’s Compensation Corporation (hereinafter “LWCC”), stated that he learned that plaintiff had been employed as a pieceworker (on an as-needed basis) and that there was no prior wage information on her. Evans testified that he continued to pay plaintiff the minimum compensation rate that the two previous adjusters had set; and, that he terminated her compensation based on a conclusion that the physicians had released plaintiff to do sedentary work and based upon a conclusion that suitable employment was available. At no time did he calculate plaintiff’s average weekly wage.
In seeking a reversal, defendants? contend that the workers’ compensation judge committed manifest error in awarding supplemental earnings benefits, attorney’s fees and penalties, future medical treatment, and payment of unpaid medical bills and expert fees.
The standard of review of findings of fact of a workers’ compensation judge in a workers’ compensation ease is manifest error. Charles v. Travelers Ins. Co., 627 So.2d 1366, 1372 (La.1993); Blanchard v. Federal Express Corporation, 95-0349 (La.App. 1 Cir. 11/9/95), 665 So.2d 11, 13. This standard applies even where factual findings are based solely on deposition testimony and reports. Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, 826 (La.1987); Fox v. National Gypsum, Inc., 96-25 (La.App. 5 Cir. 4/30/96), 673 So.2d 1223, 1228 n. 2. In the instant case, the judge relied upon testimony, depositions and reports.
Entitlement to workers’ compensation benefits is based on the claimant’s ability to earn wages. Mitchell v. Abbeville General Hospital, 93-1146 (La.App. 3 Cir. 4/6/94), 635 So.2d 540, 543. A claimant will not be entitled to temporary total disability (TTD) benefits unless he or she is unable to engage in any gainful occupation. La.Rev.Stat.Ann. Sec. 23:1221(l)(a)(West Supp.1997). Supplemental earnings benefits (SEB) are proper where a claimant is able to work, but unable to earn wages equal to ninety percent or more of the wages earned at the time of *154 injury. La.Rev.Stat.Ann. Sec. 23:1221(3)(a) (West Supp.1997). The Louisiana Supreme Court recently set out the standards for proving entitlement to SEB payments under the provisions of LSA-R.S. 23:1221(3) in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551, as follows:
“The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident. An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case... Once the employee’s burden is met, the burden shifts to the employer who, in order to defeat the employee’s claim for SEBs..., must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer’s community or reasonable geographic region. Actual job placement is not required. The amount of SEBs is based upon the difference between the claimant’s pre-injury average monthly wage and the claimant’s proven post-injury monthly earning capacity.”
Id. 556 (Citations omitted.)
It is undisputed, in the instant ease, that plaintiff is unable to return to her pre-injury employment as a painter. None of the doctors have said she can return to heavy manual labor. The workers’ compensation judge concluded:
“Mr. Bobby Roberts, an expert vocational evaluator, did actual testing on claimant’s ability to perform sedentary work activities.- He opined that she is not malingering and can not do sedentary work. Mr. Roberts’ opinion combined with Dr. G. Davis’ opinion that claimant can not do sedentary work is the basis for this OWC court’s conclusion that claimant can not do sedentary work. Furthermore, claimant can not do the sedentary jobs provided by the vocational rehabilitation specialist (VRS), even though the VRS’ efforts were not the best possible. This OWC court finds that the testing done by Mr. Roberts is equivalent to claimant actually attempting to do the jobs provided by the VRS.”
As is evident from the judge’s opinion, she placed much emphasis on the fact that Roberts did actual testing on the plaintiff. Regarding the treating orthopedic surgeons’ conclusions that the plaintiff had reached maximum medical improvement and could return to sedentary work, the judge noted that none of those doctors performed any Functional Capacity Evaluation testing. Therefore, she found their functional evaluations, without testing, were nothing more than mere “estimates of what claimant can actually do or not do”.
Based on our review of the record, we cannot say that the finding of the workers’ compensation judge that “claimant is entitled to Supplemental Earnings Benefits (SEB) from date of termination and continuing through trial at a rate of $142.22” is manifestly erroneous.
We now turn to whether penalties and attorneys’ fees were properly awarded. An employer or insurer is liable for statutory penalties when it withholds benefits without evidence to reasonably controvert an employee’s right to compensation and medical benefits. Castille v. Leesville Lumber Co., 93-1091 (La.App. 3 Cir. 4/6/94), 635 So.2d 643, 648, writ denied, 94-1147 (La.6/24/94), 640 So.2d 1351. “The test to determine whether the employee’s right has been reasonably controverted turns on whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.” Penn v. Wal-Mart Stores, Inc., 93-1262 (La.App. 3 Cir. 6/15/94), 638 So.2d 1123, 1127, writ denied, 94-1835 (La.12/28/94), 644 So.2d 651. On the other hand, attorney fees are recoverable if the employer or insurer acts arbitrarily, capriciously or without probable cause in refusing to pay or terminating benefits. La.Rev.Stat. *155 Ann. Sec. 23:1201.2 (West Supp.1997); Castille, supra, 635 So.2d. at 648. “The decision of whether to award penalties and attorney’s fees is a factual determination and should not be disturbed on appeal unless clearly wrong.” Lemoine v. Schwegmann Giant Supermarkets, 607 So.2d 708, 713 (La.App. 4 Cir.1992), writ denied, 609 So.2d 258 (La.1992).
Regarding penalties, despite having the information available, with the most cursory research, the insurer’s employees could have ascertained the claimant’s right to compensation and the amount of that compensation. Likewise, with respect to attorneys fees, we agree with the workers’ compensation judge that the insurer was arbitrary and capricious in paying to plaintiff only the minimum compensation and in terminating her benefits.
Lisa Hickman, a senior claims adjuster for the LWCC, was the first adjuster to handle this claim. She testified she commenced paying benefits to plaintiff at the minimum rate in early 1993 to insure the claimant “would receive something.” She did not calculate the average weekly wage because she claimed she did not have definitive wage information, although the information was available from the ^employment contract between the plaintiff and her employer.[1]
David Lorena and Darren Evans, also LWCC claims adjusters, did not calculate the average weekly wage, again despite the fact that the information was available.
It was not until three (3) years following the accident, that April Crosby, another LWCC claims adjuster, calculated the weekly wage benefits to which plaintiff was properly entitled. She testified she felt it necessary to calculate the average weekly wage in order to determine whether plaintiff was entitled to additional benefits. Crosby further testified that she used the information contained in the employment contract to determine the average weekly wage. Under the circumstances, we conclude the workers’ compensation judge was not clearly wrong in awarding penalties and attorney’s fees.
We conclude also that future medical treatment and experts’ fees were properly awarded. We do not find the conclusions of the trial judge to be inconsistent with the settled rule that “a workmen’s compensation claimant is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to her”[2]. The judge stated in her judgment that “Claimant is entitled to future medical treatment due to this injury and the right to bring action for payment of same is reserved to claimant”. This finding is not clearly wrong.
In connection with an award for experts’ fees, it is well settled that “employers and insurers are not liable for medical expenses incurred for purposes | ipof litigation”[3]. It' is also true that “opinion testimony given by experts justifies the payment and assessment of an expert’s fee” and “an expert is entitled to reasonable compensation for his appearance in court and for preparatory work done by him.” See Caldwell v. Exxon Corporation, 320 So.2d 319, 322 (La.App. 4 Cir.1975); Richard v. Wal-Mart Stores, Inc., 29,926 (La.App. 2 Cir.10/31/97), 702 So.2d 79; La.R.S. 13:3666(A) and (B). It is clear that Roberts’ testimony related to an evaluation of plaintiff for the purpose of assessing her functional ability to work. Neither Roberts nor Dr. Davis indicated (nor does the record show) that they were testing or examining the plaintiff for litigation purposes. We therefore conclude that the workers’ compensation judge was not in error when she awarded payment of these expert fees.
Having so concluded, we affirm the judgment of the workers’ compensation judge.
AFFIRMED.

. Fred’s Painting Contractor and the plaintiff entered into an employment contract on January 23, 1993, wherein it was agreed Fred’s Painting would pay the plaintiff $800.00 for a painting job which was to last about 15 days.

. Lester v. Southern Casualty Insurance Company, 466 So.2d 25, 27 (La.1985); Wilson v. Ebasco Services, Inc., 393 So.2d 1248, 1253 (La.1981).

. Bowman v. F. Christiana and Company, Inc., 553 So.2d 971, 980 (La.App. 4 Cir,1989)3.