820 So.2d 1122 (2002)
TOWN OF GRAND ISLE
v.
Blanche ESCHETTE.
No. 02-CA-96.
Court of Appeal of Louisiana, Fifth Circuit.
May 29, 2002.
*1123 Christopher R. Philipp, Lafayette, LA, for plaintiff-appellant.
Edward T. Diaz, Golden Meadow, LA, for defendant-appellee.
Court composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
At issue in this case is whether the Workers' Compensation Judge erred in finding claimant was injured in the course and scope of her employment on January 12, 2000; has been unable to work and is entitled to temporary total disability benefits from June 30, 2000, to present; that claimant is entitled to payment of all medical bills and related expenses arising from the January 12, 2000, accident; whether the employer arbitrarily and capriciously declined to pay benefits beyond May 1999 and whether the employer should have been ordered to pay penalties and attorney's fees as a result. For the reasons that follow, we conclude the Workers' Compensation Judge's factual findings are not manifestly erroneous. However, the portion of the decision finding claimant's *1124 employer was arbitrary and capricious must be set aside.

FACTS AND PROCEDURAL HISTORY
In June 1998, claimant and defendant herein, Blanche Eschette, filled out a preemployment questionnaire with the Town of Grand Isle. On the application, Ms. Eschette listed Buckner Rental Service and Icehouse Restaurant as her two previous employers. Grand Isle contends Ms. Eschette deliberately failed to inform it of her former employment with Grand Isle Shipyard and Air Logistics because she wanted to conceal the fact that she had previous injuries that posed physical limitations on her future employment. The pre-employment questionnaire asked Ms. Eschette several questions related to her work history. Grand Isle contends her answers to some of the questions willfully mislead it regarding the extent of her previous work history and injuries. One question asked her to list any injuries she sustained on or off the job. She answered "neck and back." Another question inquired if she had ever missed work for any of her injuries. She answered, "yes." Yet another question asked if she had ever sustained an injury resulting with an impairment percentage. She answered, "no." Grand Isle notes that Ms. Eschette knew the position she applied for required her to lift 90 pounds because her job duties were told to her by Grand Isle employee, Tisha Russell. It argues that Ms. Eschette fraudulently represented that she could do the job and failed to give it the requisite information (about her prior employers and injuries) it needed to determine that she more than likely could not have performed the custodial job.
Claimant's prior back injuries date back to a 1987 tort suit arising from a slip and fall. In 1993, she again injured her back in an "altercation." In March 1994, claimant sustained an on-the-job injury while employed by Air Logistics and Grand Isle Shipyards. Following the 1994 injury, claimant was evaluated by Dr. Christopher Cenac, an orthopedist. An MRI of claimant's lumbar spine taken at that time was normal. An EMG taken in May 1994, revealed pathology at the L4 root. In July 1994, claimant apparently re-injured her back. However, a CT scan of her lumbar spine was normal. In October 1994, she sought a second opinion from Dr. Carson McKowen. In December 1994, claimant underwent an MRI of the thoracic spine and the cervical spine. The thoracic spine MRI revealed a disc bulge at T7 while the cervical spine MRI revealed a 2 mm disc protrusion at C5. Dr. McKowen re-evaluated claimant in September 1995. An MRI revealed C5-6 herniation and a bulging disc at T8-9. Dr. McKowen did not believe claimant suffered from any spinal cord compression. He did not recommend surgery at that time. However, in November 1995, claimant underwent a cervical disc excision and fusion at the C5-6 level. Surgery was not performed at T8-9.
Dr. Cenac again saw claimant in February 1996 following a motor vehicle accident in which she injured her neck and right knee. She filed suit and settled her case in July 1996 and was not seen again for those injuries. Dr. Cenac did not treat claimant for the 1994 back injury beyond October 1997. Dr. Cenac next saw claimant in February 1998 for an evaluation requested by the Office of Social Security.[1] He opined that she was employable at a light to medium physical activity level with a thirty-five pound lifting restriction.
*1125 In June 2000, Ms. Eschette was given a pre-employment physical by Dr. Levie Johnson. She informed him of her 1996 neck surgery. He noted that her overall exam was normal. Thereafter, Grand Isle hired Ms. Eschette as the Community Center custodian. Her employment commenced on June 6, 1998. In December 1999, claimant allegedly injured her back picking up tables and sought assistance from a co-worker named Alfred Bradberry thereafter. She apparently did not seek benefits or medical treatment for this injury.
On January 12, 2000, Ms. Eschette alleges that she injured her lower back when the 1200-pound wax-stripping machine she was operating pulled and jerked her body. She asserts that she immediately felt pain and a burning sensation emanating from her lower back down through her lower extremities, causing her to stop and rest.
Later that day, claimant went to Dr. Gerald Haydel, a general practitioner, and was diagnosed with an acute lumbosacral strain and lumbar ligament/muscle sprain/ strain. She complained of left shoulder pain and left lower back pain. She was given a cortisone shot, anti-inflammatories and received sedentary work restrictions. He referred claimant to Dr. Patrick Haydel, a chiropractor. He opined that her injuries were caused by the January 12, 2000 accident.
In March 2000, an MRI diagnosed claimant as having suffered a bulging disc at L4-L5, with L4 nerve root impingement; and a disc protrusion at L5-S1. However, Ms. Eschette continued to work without restrictions until May 2000 when she filed a claim for worker's compensation benefits. Claimant received compensation benefits including paid medical benefits until June 2000.
For the instant injury claimant also treated with Dr. Lawrence Haydel, an orthopedist from April through May 2000. During that time, Dr. Michael Haydel gave claimant a series of lumbar epidural steroid injections. Dr. Cenac performed an I.M.E. and followed claimant's medical treatment from May 2000 until mid-2001. Dr. Cenac confirmed the previous MRI findings of a bulging disc L4-5 and disc protrusion that he felt aggravated by her weight. Dr. Cenac noted that this condition did not exist in any of his examinations of her prior to May 2000. In July 2000, Dr. Cenac opined in a letter to claimant's attorney that claimant receive an epidural injection and be considered disabled from May 16, 2000, pending further evaluation and treatment by Dr. Michael Haydel. He recommended she continue to receive physical therapy. The record reflects that claimant underwent epidural injections and physical therapy without ever obtaining relief from her back pain.
On June 30, 2000, the workers' compensation adjuster, Della Hildebrand, terminated claimant's benefits based on her conclusions that claimant forfeited her right to benefits under La. R.S. 23:1208 and 1208.1 by failing to inform Grand Isle of prior employment and prior injuries and that her injuries pre-dated the accident. That same day, Grand Isle, the plaintiff herein, filed a disputed claim for compensation asserting claimant fraudulently misrepresented her previously work history in order to conceal prior work-related back injuries and has thus, forfeited her right to benefits. Claimant filed a reconventional demand for penalties and attorney fees asserting Grand Isle arbitrarily and capriciously refused to pay additional benefits to her.
On September 13, 2001, a trial on the disputed claim was held before Workers' Compensation Judge Sylvia Steib. At trial, claimant and Della Hildebrand, the claim adjuster, testified. The Workers' *1126 Compensation Judge found claimant's testimony was more credible than the adjuster. Moreover, she found the adjuster was not credible. The Workers' Compensation Judge's findings of fact also noted that the medical evidence that claimant was disabled was "undisputed."
Claimant testified that she informed Mayor Carmadelle of her prior back injury and that he told her she was hired if she passed the physical. She also testified that she informed Pat Bellanger that she could not climb ladders or lift 90 pounds. Claimant noted that Dr. Cenac was the only doctor who considered her disabled and that she had not been back to work since May 16, 2000.
Grand Isle relied on claimant's answers to the questions in the pre-employment application previously discussed herein to support its fraud allegation. Grand Isle also relied on Ms. Hildebrand's testimony. She testified that Dr. Cenac did not disable claimant in May 2000. However, he agreed that she should receive an epidural steroid injection and that she should be disabled for three to five days for this procedure. From that, Ms. Hildebrand opined that she was not totally disabled as a result of this accident. Thereafter, she based her decision to discontinue claimant's benefits on Dr. Cenac's report that claimant should not have been hired as the Community Center custodian. Ms. Hildebrand testified that she sent claimant to Dr. Cenac for an evaluation not for treatment. Even though Dr. Cenac recommended claimant attend a work-conditioning program, a weight reduction program and suggested her claim be settled right away, she disregarded his recommendations because he was not her treating physician.
Grand Isle introduced the depositions of Mayor David Carmadelle, Tisha Russell, Gail Terrebonne, Patricia Bellanger and Alfred Bradberry, all employed by Grand Isle in some capacity to show that claimant did not inform them of her prior back injuries. Mayor Carmadelle stated that claimant did her job well, continued to work after the accident, and that he was never asked to discontinue her benefits but that he could not recall if claimant told him about her prior injuries. He stated that he told claimant that if she passed the physical she was hired. Tisha Russell stated that she generally discussed claimant's job duties with her, and claimant did not indicate that she could not perform any of those duties. Gail Terrebonne stated that claimant had asked for assistance moving tables because she previously hurt her back. Ms. Terrebonne also testified that she filled out an accident report and told claimant to seek medical attention. Pat Bellanger could not recall if claimant informed her of any physical limitations. Alfred Bradberry testified that he helped claimant move tables on four or five occasions after she injured her back and that each time she complained that her back was hurting.
Following the submission of post-trial memoranda, the Workers' Compensation Judge rendered her decision on January 18, 2001. The Workers' Compensation Judge found that claimant, Blanche Eschette, was injured in the course and scope of her employment on January 12, 2000; claimant has been unable to work and is entitled to temporary total disability benefits from June 30, 2000, to present; claimant is entitled to payment of all medical bills and related expenses arising from the January 12, 2000 accident. The Workers' Compensation Judge ordered Grand Isle to pay a two thousand dollar ($2,000.00) penalty and five thousand dollars ($5,000.00) in attorney fees. The Workers' Compensation Judge issued the following written reasons for judgment, stating:

*1127 ... it is the court's opinion that this claimant is entitled to recover workers' compensation benefits. She is entitled to recover medical and medication expenses, travel expenses and attorneys fees. As a threshold requirement, the claimant in a workers' compensation case bears the burden of establishing a work-related accident by a preponderance of the evidence.... An employee's testimony alone may be sufficient to discharge the requisite burden of proving the occurrence of an accident provided two elements are satisfied:
1. No other evidence discredits or casts serious doubt upon the worker's version of the incident and,
2. The claimant's testimony is corroborated by the circumstances following the alleged accident, Bruno v. Harbert Intern., Inc., 593 So.2d 357 (La. 1992).
La. R.S. 23:1208 and 1208.1 set forth the criteria for forfeiture of benefits for misrepresentation. The party who requests that the benefits be forfeited must show that the employee's statements were not only false, but they must also show that the statements were willful and deliberately done with the intent to obtain benefits. More importantly, the alleged false statements must relate to a significant part of the claimant's request for workers' compensation benefits. Accordingly, it was The Town of Grand Isle's burden to establish that claimant's statements were (1) false; (2) willful and deliberately done; (3) with the intent to obtain benefits.
This Court has read the case law and these statutes, in conjunction with other pertinent statutes and jurisprudence. The claimant has met the requisite burden of proof to establish her entitlement to benefits.
Plaintiff, Grand Isle, now appeals that decision.

ASSIGNMENT OF ERRORS
1. The Workers' Compensation Judge committed manifest error by ruling that claimant was injured in an accident during the course and scope of her employment.
2. The Workers' Compensation Judge committed manifest error by ruling that claimant was entitled to temporary-total disability benefits from June 30, 2000, in addition to payment of all medical bills.
3. The Workers' Compensation Judge committed manifest error by ruling that Grand Isle arbitrarily and capriciously refused to pay benefits and awarding claimant $2,000.00 in penalties and $5,000.00 in attorney fees.
4. The Workers' Compensation Judge committed manifest error when she failed to recognize claimant's forfeiture of benefits under La. R.S. 23:1208 and 1208.1.

DISCUSSION
Grand Isle avers the Workers' Compensation Judge improperly found claimant was injured at work on January 12, 2000 because the accident was un-witnessed. In the instant case, the Workers' Compensation Judge made a finding of fact that claimant suffered an on-the-job injury. When an accident is witnessed only by the claimant, he or she may have difficulty in discharging the burden of proof. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992) established the following two-prong test for proving unwitnessed accidents: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the *1128 alleged incident. Bruno, 593 So.2d 357, at 361. Corroboration of the worker's testimony may be provided by medical evidence or by the testimony of workers, spouses, or friends. Id. Also, the trier of fact should accept the claimant's uncontradicted testimony as true unless there is record evidence that causes suspicion or casts doubt on the reliability of the witness's testimony. Id.
The manifest error standard applies to the review of the factual determinations made by a hearing officer in a workers' compensation action. The findings of fact should be overturned only if clearly wrong. Alexander v. Pellerin Marble and Granite, 93-1698 (La.1/14/94), 630 So.2d 706. The Supreme Court in Bruno emphasized the following language in explaining the manifest error/clearly wrong standard as it applies to un-witnessed accidents.
Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a fact-finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Bruno, 593 So.2d at 361.
The record shows that claimant's report of a work-related injury was consistent and plausible. However, the fact that the accident occurred was neither corroborated nor contradicted by any witness. In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. We find the record supports that the Workers' Compensation Judge's determination that claimant is a credible witness and that her medical records sufficiently corroborate that she was injured on January 12, 2000. This finding is not contradicted in the record. Accordingly, the Worker's Compensation Judge's finding that claimant suffered an on-the-job injury is not clearly wrong.
Grand Isle asserts that Workers' Compensation Judge erroneously found that claimant is entitled to temporary total disability benefits from June 30, 2000, to present and claimant is entitled to payment of all medical bills and related expenses arising from the January 12, 2000 accident. The Workers' Compensation Judge found that claimant was injured on the job. This finding is supported by Dr. Cenac's opinion that claimant was disabled as a result of the accident. Thus, we cannot say the Workers' Compensation Judge committed manifest error.
Grand Isle argues that the Workers' Compensation Judge committed manifest error when it failed to recognize claimant's forfeiture of benefits under La. R.S. 23:1208 and 1208.1.
La. R.S. 23:1208 provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to *1129 compensation benefits under this Chapter.
La. R.S. 23:1208.1 provides:
Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.
Our review of the record indicates that claimant did not make any false statements or misrepresentations on her application. On the contrary, claimant stated that she had prior neck and back injuries which caused her to miss work. Additionally, claimant was never diagnosed with a percentage of injury impairment. Thus, we find claimant gave Grand Isle enough truthful information for it to conduct a further investigation of her former injuries before it hired her. Moreover, we note that the pre-employment application was not executed for the purpose of obtaining benefits; rather, it was executed so that claimant could obtain employment. Consequently, we find sufficient evidence in the record to determine that claimant did not forfeit her right to compensation by making false statements regarding her prior injuries for purpose of obtaining benefits.
Having so found, our next inquiry is whether Grand Isle acted arbitrarily and capriciously in discontinuing the payment of medical benefits so as to warrant imposition of attorney's fees. Awards of penalties and attorney's fees in workers' compensation are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. Williams v. Rush Masonry, 98-2271 (La.6/29/99), 737 So.2d 41. Although the Workers' Compensation Act is to be liberally construed in regard to benefits, penal statutes are to be strictly construed. Id.
Grand Isle argues that the Workers' Compensation Judge erred in finding it acted arbitrarily and capriciously when it denied compensation and medical benefits beyond June 2000, making an award of penalties and attorney's fees improper. Pursuant to La. R.S. 23:1201(F)(2), an employer or insurer is liable for penalties for withholding benefits without evidence to "reasonably controvert" the employee's right to compensation and medical benefits. In addition, La. R.S. 23:1201.2 provides that an employer or insurer who discontinues payment of compensation benefits shall be liable for attorney's fees when the discontinuance is found to be arbitrary, capricious, or without probable cause.
Having reviewed the record, we cannot say Grand Isle behaved in an arbitrary and capricious manner. Prior to denying payment, it investigated the claim. Based on that investigation it determined that claimant had previous back and neck injuries that may have caused her injury in this case. Consequently, it seems Grand Isle did not act arbitrarily or capriciously when it denied benefits after May 1999. *1130 Thus, the employer should not be penalized for contesting whether claimant's need for medical treatment stemmed from the work-related accident. As a result, claimant is not entitled to penalties or any additional attorney's fees.
In sum, we conclude the Workers' Compensation Judge's factual findings are supported by the record and that the record establishes Grand Isle was not arbitrary or capricious or without probable cause in discontinuing compensation and medical benefits.
Accordingly, we affirm that portion of the Workers' Compensation Judge's decision finding that claimant, Blanche Eschette, was injured in the course and scope of her employment on January 12, 2000, has been unable to work and is entitled to temporary total disability benefits from June 30, 2000, to present and is entitled to payment of all medical bills and related expenses arising from the January 12, 2000, accident. However, we set aside the Workers' Compensation Judge's order awarding claimant penalties and attorney fees.
AFFIRMED IN PART; SET ASIDE IN PART.
NOTES
[1] Claimant applied for Social Security Disability benefits in 1987 and 1998. She was denied benefits both times.