# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 19-300


MALVILEN COOK

VERSUS

ST. GENEVIVE HEALTH CARE

SERVICES, INC.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 2
PARISH OF RAPIDES, NO. 17-03079
JAMES L. BRADDOCK, WORKERS COMPENSATION JUDGE

**********

## JOHN E. CONERY
## JUDGE

**********

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery, Judges.


**AFFIRMED AS AMENDED AND RENDERED.**

**Donald J. Anzelmo**
**Charles A. Anzelmo**
**Anzelmo & Creighton, L.L.C.**
**1900 North 18th Street, Suite 105**
**Monroe, Louisiana  71201**
**(318) 855-3735**
**COUNSEL FOR DEFENDANT/APPELLANT:**
      **St. Genevive Health Care Services, Inc.**

**George Arthur Flournoy**
**Flournoy Law Firm**
**1239 Jackson Street**
**Alexandria, Louisiana  71301**
**(318) 487-9858**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Malvilen Cook**

**CONERY, Judge.**

St. Genevive Health Care Services Inc. (St. Genevive) suspensively appeals the December 14, 2018 judgment of the Workers' Compensation Judge (WCJ) entered in favor of its former employee, Ms. Malvilen Cook.[1] The WCJ awarded Ms. Cook Temporary Total Disability Benefits (TTDs), reimbursement of her medical and travel expenses, $4,000 in penalties, and attorney fees in the amount of $14,000, with interest. The WCJ assessed all costs to St. Genevive. The WCJ denied St. Genevive's special defenses pursuant to La.R.S. 23:1208, a misrepresentation defense based on fraud, as well as La.R.S. 23:1208.1 based on misrepresentation on a second injury questionnaire. Ms. Cook answered the appeal and seeks additional penalties pursuant to La.R.S. 23:1208(I) as well as additional attorney fees for appellate work.[2] For the following reasons, we affirm as amended and render.

## FACTS AND PROCEDURAL HISTORY

The claimant, Ms. Cook, was a long time employee of St. Genevive, having begun her work as Director of Social Welfare (DSW) on March 1, 2006, and continued through March 31, 2017. Shortly after her hire date she was promoted to DSW supervisor. That job involved her supervision of thirty to forty DSW workers, and also made her responsible for twenty-five to thirty client's homes.[3] Ms. Cook

---

[1] At trial Ms. Cook testified that since the date of her injury, she had married Mr. Jasper Hickman, but the WCJ chose to refer to her as Ms. Cook in the WCJ's oral reasons for ruling.

[2] Ms. Cook also sought in her answer, "a reduction in the credit allowed defendants' for wages paid plaintiff after March 31, 2017." However, this request is not briefed by Ms. Cook and therefore cannot be determined by this court on appeal.

[3] When asked about her responsibilities as supervisor, Ms. Cook replied:

> I am to manage my homes. I have to make sure that they homes are staffed
> with available staff. If I'm unable to have staff, I have to go in there and work it

continued in this position until her second job related injury on March 31, 2017. Ms. Cook testified that she enjoyed her work with the mentally and/or physically handicapped. In addition, Ms. Cook was responsible for cleaning the offices of St. Genevive, for which she was paid $200.00 for every two-week period.

Ms. Cook claims two work-related injuries. The first occurred on March 28, 2017 when she was called to assist DSW Noris Marie Scott in transporting a client to LSU hospital in Shreveport. The client had a specially adapted wheelchair that had to be placed in Ms. Cook's trunk. It weighed approximately 50-60 lbs. While lifting the chair, Ms. Cook experienced a sudden severe burning pain down her low back into her left leg and felt a sudden snap in her back. She informed Ms. Scott that she could have hurt her back while lifting the chair, but at first Ms. Scott thought she was only joking. However, when they arrived at the hospital, Ms. Cook was unable to help in unloading the wheelchair, and Ms. Scott had to enlist the help of a gentleman to remove the chair.

Typically, as a supervisor, Ms. Cook would have remained at the hospital until they were able to obtain a bed for the client, but due to the long delay and her increased back and leg pain, she told Ms. Scott she needed to leave. Ms. Scott testified she could tell by the pained expression on Ms. Cook's face she was in pain and told her to go home.

myself. If the staff is with a total care client and needs assistance with anything, we're supposed to assist them with it, such as bathing, grooming. Unfortunately, like if the staff is an emergency situation and needs to see a doctor, no transportation is available, a supervisor has to take responsibility if that's her client to get that client to a doctor. We are to monitor weekly, clients weekly. We're in and out of the office all day with going to see different clients.

At the end of the month, all 32 of the clients [have] to be seen. We have monitor [sic] on all those clients that we have paid a visit to all those clients.

2

Ms. Cook returned to work the next day, still in pain and noticeably limping. Her direct supervisor, Ms. Delmar Aguilar, inquired why she was limping, and Ms. Cook told her about the wheelchair incident. Although required, Ms. Aguilar did not prepare an incident report or send Ms. Cook to Work Kare, St. Genevive's group of treating physicians for work-related injuries. At trial, Ms. Aguilar denied that she talked to Ms. Cook about the wheelchair incident.

Three days later, on March 31, 2017, Ms. Cook made house calls in Mansfield and Many. However, driving her car to Mansfield caused the pain in her low back to increase, and she had to get out of the car to stretch in order to get some relief from the back and leg pain. She began to experience severe muscle spasms, migraine-like headaches, dizziness, and she began to feel faint. Ms. Cook thought she was having a stroke and called her husband and son for help. Her son met her in Many.

As Ms. Cook was getting out of the company car to get into her son's car, her left leg gave way and she fell to the ground. Her son drove her to Byrd Regional Hospital, where emergency room physicians determined she had not had a stroke. The "Admit Sheet" lists the "Admitting Diagnosis" as "HEADACHE BACK PAIN LEG." The "Nurse's Notes" indicate Ms. Cook was given intervention medication, consisting of "Zofran 4 mg, morphine 5 mg, and Decadron 4mg" for treatment of "10 out of 10" pain to her head which "radiates to back and left leg pain." Ms. Cook described the "quality of pain …"as burning, aching, tender, throbbing." Ms. Cook was given discharge instructions to "follow up [with her doctor] … and medication usage."

Over the weekend, Ms. Cook's back and leg pain became worse and she reported on April 3, 2017 to the Willis Knighton Work Kare medical facility in

3

Shreveport. As previously stated, St. Genevive sends its employees to Work Kare for work-related injuries. Ms. Cook told the receptionist at Work Kare about her experience on March 31, 2017. She also stated she had been instructed by the physicians at the emergency room at Byrd Regional Hospital to seek follow-up care if she felt worse. The receptionist received verbal approval for Ms. Cook's work-related treatment at Work Kare from Ms. Aguilar, her direct supervisor.

On April 3, 2017, Ms. Cook told Dr. Raymond Dennie at Work Kare about the March 28, 2017 wheelchair incident, which was recorded in total in Dr. Dennie's April 4, 2017 report entitled "Treatment Memo Custom:"

CC: Low back and left leg pain.

HIP: This 45 [year old] lady states she was picking up a wheelchair with a patient in it and experienced low back pain which radiated all the way down to her toes. She states since then, her left leg gives out. She also complains of numbness, tingling, and generalized weakness in her left lower extremity. She has significant past history. She informs me that she has been having back problems for over a year. She had a prior work injury. She states she was followed at LSU and about a year ago she had an MRI and was told she had a herniated disk in the lumbar spine and they wanted to do surgery which she refused. She states on this occasion when she was picking up the wheelchair, she had an immediate recurrence of her symptoms. This appears to be a re-injury of some sort.

Dr. Dennie ordered occupational therapy, which was authorized by Ms. Aguilar on April 5, 2017. However, after three more exams, Dr. Dennie became aware of the severity of Ms. Cook's pain and ordered an MRI on April 28, 2017. Ms. Aguilar also authorized the MRI, which was conducted on April 29, 2017. The MRI indicated that Ms. Cook had a "broad disk bulge" at "L5 – S1." Dr. Dennie discontinued her therapy and recommended she see an orthopedist. Ms. Cook made a request to see a specialist at The Spine Institute but was denied further treatment by St. Genevive in mid-May of 2017.

Ms. Cook filed a Disputed Claim for Compensation (Form 1008) on May 22, 2017. St. Genevive initially filed a general denial of Ms. Cook's claim on June 27, 2017. However, on November 30, 2017, it filed an amended answer raising the defense of fraud under La.R.S. 23:1208, and misrepresentation on the second injury fund questionnaire, pursuant to La.R.S. 23:1208.1.

This matter was tried on August 15, 2018 and the WCJ issued oral reasons on November 7, 2018. Judgment was signed on December 14, 2018 wherein the WCJ found that Ms. Cook was entitled to Temporary Total Disability Benefits (TTDs) beginning April 1, 2017, and that St. Genevive was entitled to a credit for wages paid after March 31, 2017 in the amount of $3,130.00.

The WCJ further found that Ms. Cook's average weekly wage was $949.17, that she was entitled to medical travel expenses in the amount of $1,000.21, and reimbursement of medical expenses without benefit of the fee schedule to the following medical providers; Work Kare, $1580.00; MRI, $3,851.00; Red River Consultants, $290.00; Byrd Regional Hospital, $16,858.00, and Dr. Clark Gunderson, $3,335.00.

The WCJ further ordered St. Genevive to pay $4,000.00 in penalties pursuant to La.R.S. 23:1201(F) for failure to pay benefits and medical expenses, and $14,000.00 in attorney fees pursuant to La.R.S. 23:1201(J). All costs were assessed against St. Genevive, and interest was assessed on all awards according to law. The WCJ denied St. Genevive's claims of fraud under La.R.S. 23:1208 and La.R.S. 12:1208.1. St. Genevive filed a motion for new trial which was denied after hearing on January 28, 2019. St. Genevive now timely appeals the WCJ's December 14, 2018 judgment.

## ASSIGNMENTS OF ERROR

St. Genevive asserts the following on appeal:

[1.]  The Workers' Compensation Judge erred in finding that Cook had sustained her burden of proof regarding the occurrences of two separate accidents, on March 28, 2017 and March 31, 2017.

[2.]  The Workers' Compensation Judge erred in failing to find that Cook forfeited the right to benefits by making false statements representations in furtherance of a claim for benefits in violation of La.R.S. 23:1208.

[3.]  The Workers' Compensation Judge erred in failing to find that Cook forfeited the right to benefits pursuant to La.R.S. 23:1208.1.

[4.]  The Workers' Compensation Judge erred by awarding penalties and attorney fees under the facts and circumstances of this case.

## LAW AND ANALYSIS

### *Standard of Review*

This court discussed the standard of review to be utilized in workers' compensation cases in *LeBlanc v. Wal-Mart Stores, Inc.*, 15-558, pp. 10-11 (La.App. 3 Cir. 11/4/15), 177 So.3d 1125, 1132–33, noting:

> The standard of review in a workers' compensation claim is well established and was succinctly stated in *Bracey v. City of Alexandria*, 13-16, p. 3 (La. App. 3 Cir. 6/5/13), 115 So.3d 1211, 1214-15, *writ denied*, 13-1934, (La. 11/8/13), 126 So.3d 455 (other citations omitted).

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't. of Corrections*, 93-1305 (La.2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State*, 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

6

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). "[T]he manifest error standard of appellate review applies in workers compensation cases and great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Central Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied,* 04-315 (La.4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61.

***Assignment of Error One-Ms. Cook's Disputed Claim for Compensation***

In essence, the WCJ found that Ms. Cook's claim for benefits and medical treatment was denied by St. Genevive on the basis that they did not believe that the incident with the wheelchair occurred on March 28, 2017. The WCJ further concluded that Ms. Aguilar, Ms. Cook's direct supervisor, determined that Ms. Cook's characterization of the incident on March 31, 2017 as "a stroke" and not job-related, but that determination was unreasonable and without basis.

In *Ebare v. Cubic Applications, Inc.*, 08-1095, pp. 3-4 (La.App. 3 Cir. 3/4/09), 5 So.3d 1028,1030-31, a panel of this court stated:

> In *Bruno* [v. *Harbert International, Inc.*, 593 So.2d 357, 360-61 (La.1992)] (citations omitted), the Louisiana Supreme Court noted that, while "Louisiana courts view the question of whether there was an accident from the worker's perspective[,] ... the worker's burden of proof is not relaxed. Rather, as in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence." Regarding the claimant's burden of proof, the *Bruno* court went on to state:
>
>> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident.

7

*Id.* at 361. In addition, this court has held that the existence of a pre-existing condition alone does not foreclose the receipt of workers' compensation benefits where there is evidence that the on-the-job accident aggravated and accelerated the claimant's pre-existing condition. *Bush v. Avoyelles Progress Action Comm.*, 07-685 (La.App. 3 Cir. 10/31/07), 970 So.2d 63.

The WCJ rendered extensive oral reasons for ruling, ultimately finding that Ms. Cook sustained her burden of proving "that she sustained an incident with a wheelchair on March 28, 2017. The WCJ further assessed witness credibility and explained that Ms. Cook's version of events was "corroborated by the testimony of [Noris] Scott and the medical records at Work Kare from a Dr. Raymond Dennie."

Prior to making this determination, the WCJ concluded that indeed Ms. Cook had been called by Ms. Scott to assist her in transporting a client to the hospital. It was necessary for the two women to load a 50 to 60 pound modified wheelchair into Ms. Cook's vehicle. The WCJ found that during this process, Ms. Cook "sustained injury to her low back. But nevertheless, "they continued -- they loaded the wheelchair and got this person to the hospital, had to wait in the intake area for some time to have the person admitted to the hospital."

The WCJ further explained that:

Ms. Cook testified that during the process at the hospital, her pain in her back got worse and she had to leave. And Ms. [Noris] Scott testified that Ms. Cook did indeed help her with this patient and indeed helped lift the wheelchair into Ms. Cook's vehicle, and that Ms. Cook told her at that time that she felt like she hurt her back. but she testified at trial that she thought … Ms. Cook was just joking at the time, and that's the same statement she gave in a recorded statement to an adjuster in this [matter] in May of 2017.

Nevertheless, Ms. Scott testified at trial that once they got to the hospital … that Ms. Cook still told her that her back was getting worse. It became apparent to Ms. Scott, through observation of Ms. Cook, that Ms. Cook was indeed in pain … from lifting this wheelchair.

8

The WCJ further found that Ms. Aguilar, Ms. Cook's supervisor, testified "that she was never told at this time that Ms. Cook had sustained a back injury lifting a wheelchair, that she came into work the next two days, and on April the 3rd she called in, said she couldn't come to work." The WCJ reported that Ms. Aguilar contended "that Ms. Cook said this was a result from sitting in a hard chair at the hospital … on March 28th, that Ms. Cook never told her about the wheelchair incident."

The WCJ then discussed the medical records from Work Kare, where Ms. Cook testified "St. Genevive sent their employees for job injury care." The WCJ further found that when Ms. Cook was at Work Kare on April 3, 2017, "she indicated the date of injury on the top portion of the page of March 31st, 2017, as well as March 28th, 2017 and the March 28th date was circled."

The WCJ further found in a review of the nurse's notes from Work Kare the following, "it says 'March 28, ´17, hurt neck, back, foot picking up a wheelchair with a patient in it. March 31, ´17, passed out from a bad headache, left leg numbness, et cetera,' and that's the second incident."

Ms. Cook was denied benefits in mid-May 2017 and filed her 1008 Form on May 22, 2017. Defendant's Exhibit 3 indicates that St. Genevive did not obtain Ms. Cook's medical records for her treatment at Work Kare beginning April 3, 2017 until September 14, 2017. Defendant's Exhibit 2, dated November 6, 2017, is the true and certified copy of Ms. Cook's medical records from Work Kare, prior to her treatment at Work Kare on April 3, 2017, and subsequent to her injury on March 28, 2017. The records from Work Kare dated November 6, 2017 were

9

received just prior to St Genevive's amended answer dated November 30, 2017, by which it claimed fraud pursuant to La.R.S. 23:1208 and 23:1208.1.

Concluding, the WCJ stated :

> As I just went through explaining, it does purport [report] the wheelchair incident on March 28th, and the Employer bears the burden of continuing to investigate these claims, and Ms. Aguilar said she didn't hear anything about a wheelchair. She says when Ms. Cook finally filled out an injury report, she didn't say anything there about a wheelchair, but Ms. Aguilar was aware that Ms. Cook had gone to Work Kare because she received a call from Work Kare on that day and authorized Work Kare to see Ms. Cook.

> If anybody had obtained those medical records from Work Kare dated April 3rd of 2017, they would have seen plainly that Ms. Cook reported a job injury with a wheelchair on March 28th of 2017**. Any discrepancies about that from the point of view of St. Genevive are minor and don't tarnish the information provided to the Court by Malvilen Cook.**

(Emphasis added.)

The record before us supports the extensive credibility findings of the WCJ in oral reasons for ruling. We therefore find no manifest error in the WCJ's judgment that Ms. Cook sustained her burden of proof by a preponderance of evidence. In particular, the evidence supports the WCJ's finding that Ms. Cook suffered an injury while lifting a wheelchair on March 28, 2017, and that she further sustained a second related injury with the increased symptoms of the injury to her back on March 31, 2017. Accordingly, we affirm the WCJ's determination that Ms. Cook was entitled to workers' compensation benefits from her former employer St. Genevive.

10

***Assignment of Error Two - Louisiana Revised Statutes 23:1208- Fraud Based on False Statements or Representations***

St. Genevive also argued that Ms. Cook committed fraud pursuant to La.R.S. 23:1208, which provides in pertinent part:

Louisiana Revised Statutes 23:1208, provides in pertinent part:

> A.     It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
>
> . . . .
>
> E.     Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

In *Dugas v. AutoZone*, 12-727, p. 4 (La.App. 3 Cir. 12/5/12), 103 So.3d 1271, 1275, a panel of this count discussed La.R.S. 23:1208 and found:

> Pursuant to La.R.S. 23:1208, a claimant forfeits benefits when he makes a false statement in seeking to obtain benefits. To prevail under this statute, an employer must prove " 'that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.' " *Burnett v. Vector Elec. & Controls, Inc.*, 10-81, p. 4 (La.App. 3 Cir. 6/2/10), 40 So.3d 477, 480 (quoting *Resweber v. Haroil Constr. Co.*, 94-2708, (La.9/5/95), 660 So.2d 7).

A workers' compensation judge's determination related to a forfeiture defense is subject to the manifest error/clearly wrong standard of review. *Doyal v. Vernon Parish Sch. Bd.,* 06-1088 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, *writ denied,* 07-832 (La.6/15/07), 958 So.2d 1190.

Although St. Genevive argues that Ms. Cook made misrepresentations to the adjuster, Mr. Daniel Davis, in her interview taken on May 10, 2017, we find that the discussion with Mr. Davis on the record further supports the WCJ's determination that Ms. Cook lacked a "willful intent to deceive." This conclusion

11

is based on her discussion of her situation and delay in getting approval for treatment from St. Genevive:

Ms. Cook:    I'm a tell you what was happening – I don't know. Like I said, I don't know how all this stuff works. I never even heard any… I heard about workman comp but I [ain't] never knew how it worked. They [was], everything that was getting approved from St. Genevive is where they [was] getting approval. My supervisor, every time they would tell me well[,] they didn't approve this or they didn't approve that, and they she called me on Monday and told me workman's comp was just turned in on Monday.

Daniel:    Mm-hmm (affirmative). So the company actually held over too far?

Ms. Cook:    But they [were] telling me all along everything. And I was asking for information on workman comp so I can see what's taking so long for the approvals. They kept telling me we it's there, I gave her all the information. I said well they said they don't have anything on me [in] file. So it was like they was giving me the runaround and it was really starting … I mean, I don't know. Is this how this work or this how this supposed to go?

This conversation offers further support for the WCJ's determination that Ms. Cook did not have a willful intent to deceive St. Genevive in order to obtain benefits, considering the lack of sophistication she possessed concerning the process, and especially considering that she had been employed by St. Genevive for some eleven years without ever filing a claim for workers' compensation benefits.

St. Genevive further argued that Ms. Cook made a misrepresentation to Dr. Gunderson, as she failed to inform him about her previous back condition. The WCJ stated in its oral reasons for ruling that Ms. Cook "testified she'd hurt her back in about 2014 or ´15 moving some furniture (in her office) and she had medical care" at University Health. The physicians found a problem with her lumbar spine and suggested surgery. Ms. Cook declined the surgery, underwent therapy, and

12

testified "she was essentially okay." The records submitted into evidence support her testimony that "she continued about her work."

The WCJ concluded in oral reasons for ruling:

> But I have to say that not all statements, of course amount to a misrepresentation sufficient to invoke 23:1208 because the employer has to show there's a willful intent to deceive, and I cannot find a willful intent to deceive on behalf of Ms. Cook. And the primary reason I can't do it that is because in my view she has made no attempt to deceive her employer about this previous medical condition. And the reason I say that is because it is found in Dr. Dennie's typewritten notation from his examination of Ms. Cook on April 3rd of 2017, which I don't know that the employer ever retrieved this prior to the denial of Ms. Cook's claim which was initially just denied on the fact she couldn't prove she had an on-the-job accident. But when you looked at that typewritten report, it indicates it's a memo date April 4th of 2017. She's there with a chief complaint of low back and left leg pain.

As previously indicated, Ms. Cook told Dr. Raymond Dennie at Work Kare on April 3, 2017 about the wheelchair incident, which was recorded in his April 4, 2017 "Treatment Memo Custom." The memo was quoted and relied on by the WCJ in his oral reasons for ruling as follows:

> CC: Low back and left leg pain
>
> HIP: This 45 [year old] lady states she was picking up a wheelchair with a patient in it and experienced low back pain which radiated all the way down to her toes. She states since then, her left leg gives out. She also complains of numbness, tingling, and generalized weakness in her left lower extremity.

The WCJ compared Ms. Cook's symptoms to those she had in the past and stated, "this is what convinces the Court that her statement to Dr. Gunderson was just inadvertent and that there's no deliberate intent to deceive this employer who might owe her workers' compensation benefits."

Further, the WCJ also cited the second paragraph of Dr. Dennie's April 4, 2017 report, also entitled "Treatment Memo Custom," which provided:

13

She has significant past history.  She informs me that she has been having back problems for over a year.  She had a prior work injury. She states she was followed at LSU and about a year ago she had an MRI and was told she had a herniated disk in the lumbar spine and they wanted to do surgery which she refused.  She states on this occasion when she was picking up the wheelchair, she had an immediate recurrence of her symptoms. **This appears to be a re-injury of some sort.**

The WCJ further compared the information about the source of Ms. Cook's back injury from Dr. Dennie's report to the deposition testimony of Dr. Gunderson, and stated:

And this was confirmed by Dr. Gunderson.  When Dr. Gunderson was informed of all these prior problems, he didn't equivocally state that this is not something new.  He didn't say this is the same old thing,  He said this wheelchair aggravated this condition and was the cause of Ms. Cook's current complaints at the time he examined her.

Accordingly, the WCJ found that St. Genevive "failed to demonstrate to the WCJ that Ms. Cook willfully made representations in this matter for the purpose of receiving benefits because she freely disclosed this to the physician at Work Kare and she said she knew Work Kare was where the employer sent its injured employees."

We find no manifest error in the WCJ's determination that St. Genevive failed to carry its burden of proof that Ms. Cook had the "willful intent to deceive to obtain benefits under the Workers' Compensation Act" pursuant to La.R.S. 23:1208.  Our review of the record before us instead supports the WCJ's extensive findings of fact on this issue.

14

***Assignment of Error Three-Louisiana Revised Statute 23:1208.1 - Forfeiture Based on Alleged Misrepresentations by Ms. Cook on the Second Injury Fund Questionnaire.***

Louisiana Revised Statutes 23:1208.1 provides:

Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. **This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.** (Emphasis added.)

As previously stated, the standard of review of an appellate court of the factual determinations of a WCJ are subject to the manifest-error clearly wrong standard. A panel of this circuit in *Lanclos v. Coastal Food, LLC,* 04-222 (La.App. 3 Cir. 7/7/04), 877 So. 2d 309, correctly summarized the standard of review when the employer has claimed that all benefits to an employee should be denied based on La.R.S. 23:1208.1, one of two anti-fraud statutes. In *Lanclos,* the court stated:

In general, an appellate court reviews the factual determinations of a workers' compensation judge pursuant to the manifest error-clearly wrong standard. *Apeck Constr., Inc. v. Bowers,* 03-486 (La.App. 3 Cir. 12/10/03), 862 So.2d 1087, *writ denied*, 04-459 (La.4/23/04), 870 So.2d 301. This is likewise the standard of review where an employer has alleged that a claimant has committed fraud pursuant to La.R.S. 23:1208.1. *See Colonial Nursing Home v. Bradford,* 02-588 (La.App. 3 Cir. 12/30/02), 834 So.2d 1262, *writ denied*, 03-364 ( [La.]4/21/03), 841 So.2d 802. Where conflict in testimony arises, a workers' compensation judge's reasonable factual inferences and reasonable assessments of credibility are not to be disturbed on appeal, despite the beliefs of a reviewing court that its inferences or evaluations are more reasonable. *Williamwest v. Am. Studios/PCA Int'l, Inc.*, 02-98 (La.App. 5 Cir. 9/30/02), 827 So.2d 526. However, an appellate court may conclude that the workers' compensation judge's findings were manifestly erroneous or clearly wrong, even when ostensibly based

15

upon a credibility determination, "[w]here documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness's story[.]" *Town of Grand Isle v. Eschette,* 02-96, p. 8 (La.App. 5 Cir. 5/29/02), 820 So.2d 1122, 1128, *writ denied*, 02-1810 (La.10/4/02), 826 So.2d 1131 (quoting *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357, 361 (La.1992)).

*Id.* at 318 (alterations in original).

In order to succeed on this forfeiture claim based on fraud pursuant to La.R.S. 23:1208.1, the law requires St. Genevive prove the following:

> There are three component parts to establishing a Section 1208.1 violation: (1) untruthfulness; (2) prejudice; and (3) notice.

> Furthermore, the claimant must do more than simply provide untruthful answers before forfeiting benefits. The employer must also prove that the untruthful statements were prejudicial to it and that it provided the employee with statutory notice. La.R.S. 23:1208.1 applies when an employee is dishonest on an employer's medical questionnaire before the accident or injury. [*Resweber v. Haroil Const. Co.*, 94-2708, 94-3138 (La 9.5.95), 660 So.2d 7.] In *Resweber v. Haroil Const. Co.*, the supreme court concluded that the legislature imposed forfeiture under La.R.S. 23:1208.1 strictly for when the employer suffers prejudice. An employer is prejudiced only when the false statement "directly relates to the medical condition for which a claim is made or affects the employer's ability to receive reimbursement from the second injury fund." La.R.S. 23:1208.1

> . . . .

> Because statutory forfeiture is a harsh remedy, its application must be strictly construed.

*City of Eunice v. Carrier*, 01-1184, p. 3 (La.App. 3 Cir. 2/20/02), 821 So.2d 3, 7, *writ denied*, 03-813 (La. 5/9/02), 843 So.2d 409. Accordingly, in order for St. Genevive to avoid liability under the statute, it maintains the burden of proof to show, "an untruthful statement, prejudice to the employer, and compliance with the notice requirements of the statute." *Wise v. J.E. Merit Constructors, Inc.*, 97-684, p. 7 (La.1/2/98), 707 So.2d 1214, 1218; *See also Taylor v. G.W. Morgan Logging Co., Inc.*, 12-294 (La.App. 3 Cir. 10/3/12), 100 So.3d 341.

16

Addressing the purpose of La.R.S. 23:1208.1, the WCJ stated:

Under this particular statute, 1208.1, the employers can ask an employee about pre-existing conditions, and the purpose of that is to allow the employer, if they hire someone with a known pre-existing permanent partial disability, who then has a job accident, to perhaps have the opportunity to seek some relief with a second injury fund.

As for the component parts of such a claim, the WCJ first addressed the notice requirement and explained that, despite Ms. Cook's signing of the document, St. Genevive failed to properly explain the form and its importance to Ms. Cook. The WCJ found:

And the second injury questionnaire was signed by Ms. Cook. She testified at trial that this form was left on her desk and she signed it. Ms. Aguilar, the supervisor, said she didn't know anything about this form until she had previously attended some kind of learning program from the insurer of St. Genevive where they learned about this form and were told they should have their employees sign this form. And she testified, they got copies of the form, and she put them in some cubicles or kind of a mailbox area for the workers.

But it is clear from both Ms. Aguilar's testimony and Ms. Cook's testimony that Ms. Aguilar, no matter how Ms. Cook ended up with this from, that no one from the employer ever sat down with any employee, Ms. Cook in particular, explained this form to the employee or the importance of this form to the employee. And nevertheless, Ms. Cook signed it, and she acknowledged her signature on that form at trial.

The second injury form at issue includes the heading "Louisiana WORKFORCE Commission" and is entitled "LA OWCA Second Injury Board Knowledge Questionnaire." It is signed by Ms. Cook and dated "1/19/17." The "Employee Witness" is Ms. Aguilar, who also signed the form on "1·19 ·17." Only questions number one, four and five have been answered "No" on the last page of questions section.

The portion of the document signed by Ms. Aguilar indicates that she has "confirmed that the employee understands the consequences associated with

providing false information or omitting pertinent information … have confirmed that the employee is able to read and understand the information provided on this questionnaire … have confirmed the number of and labeled the pages of the questionnaire." However, a review of the second injury form supports the WCJ's conclusion that proper notice of the importance of the answers given by Ms. Cook was never given. Rather, January 19, 2017 was the first time the form was given to Ms. Cook to complete. It was also contemporaneously distributed to some two hundred of her St. Genevive co-workers.

In concluding that St. Genevive failed to carry its burden of showing that La.R.S. 23:1208.1 applied to Ms. Cook's actions in filling out the second injury questionnaire, the WCJ stated, "La.R.S. 23:1208.1 applies when an employee is dishonest on an employer's medical questionnaire before the accident or injury." The WCJ further explained that "an employer must suffer "prejudice," and that an employer is only prejudiced when a false statement "directly relates to the medical condition for which a claim is made or affects the employer's ability to receive reimbursement from the second injury fund." La.R.S. 23:1208.1. The WCJ also correctly reported that, "Because statutory forfeiture is a harsh remedy, its application must be strictly construed."

In support of this reasoning, the WCJ relied on the case of *DeBarge v. LFI of Lake Charles*, 14-747, p.14 (La.App 3 Cir. 12/23/15), 154 So. 3d 1279, 1287, which cited a number of opinions providing that La.R.S. 23:1208.1 "should be strictly construed against the employer, who is presumed to be in a better position to prevent accidents in the workplace through its hiring and firing decision than the worker who seldom has the luxury of opting out of the work place." *Pickett v. Stine Lumber Co.*, 93-1534 (La.App. 3 Cir. 6/1/94), 640 So.2d 769.

18

As indicated by the WCJ, the panel in *DeBarge* also found the language, the findings, and analysis of the WCJ in *King v. Grand Code Nursing Home*, 93-779, p. 5-6 (La.App. 3 Cir. 3/9/94), 640 So.2d.348, 351-52, *writ denied*, 94-865 (La.5/13/94), 641 so.2d 204, instructive. The WCJ in this case quoted *King*, 640 So.2d at 351-52, in pertinent part:

> "When there is any legitimate ambiguity concerning the questionnaire or inquiries into an employee's medical history, a court should lean favorable toward the employee in determining whether [he knowingly [sic] failed to answer the questionnaire truthfully. In other words, for the sanctions of La.R.S. 23:1208.1 to apply,] the employer should have the burden to prove that the questionnaire or inquiries into an employee's medical history were clear and unambiguous, and that conditions were such that an employee fully understood that his answers had to be thorough and complete.
>
> "There are sound reasons to require an employer to explain a medical history questionnaire to an employee, who is ofter [sic] uneducated. Conceivably, it is to an employer's advantage that the claimant not answer a medical history form correctly or completely because in that case it would not owe any workers' compensation at all for any reinjury, regardless of the circumstances. The potential for abuse would be great, and the best safeguard would be to require or to find that which is implicit within the meaning of 23:1208.1 that the employer present the medical history questionnaire to the prospective employee in a thorough manner."

The WCJ then concluded, "that there's no testimony or evidence at all that St. Genevive provided Ms. Cook with the second injury questionnaire in any form or fashion," as provided in *DeBarge* and the long line of cases cited therein.

The WCJ also explained that St. Genevive was required to show "that whatever injury is supposed to be that it's directly related to the previous condition and simply pointing to an injury to the same body area is not sufficient. The employer must show that because of the previously existing condition the subsequent injury was inevitable." The WCJ indicated he had thoroughly read Dr. Gunderson's deposition, who was the only physician Ms. Cook ever saw for her

back problems "after these job accidents." St. Genevive "never had Ms. Cook seen by another physician." The WCJ found that "nowhere in Dr. Gunderson's deposition could I ever find any type of statement where Dr. Gunderson said that her previous back conditions made this subsequent accident and injury inevitable." The WCJ further explained:

> He did not really address the suggestion that this was just an ongoing problem from something in the past because he noted that Ms. Cook, even with whatever occurred in the past, which he was made aware of in his deposition which was a lumbar condition in the same area as the current issue under dispute, he noted that she continued working and she continued working well. So this condition he was seeing her for was related to -- as she related the wheelchair incident on March 28th of 2017. So they failed to show in this Court's view any violation of Ms. Cook with regard to 23:1208.1

For the reasons, given by the WCJ and our review of the record before us, we find no manifest error in the denial by the WCJ of St. Genevive's claim that Ms. Cook's workers' compensation benefits should be denied based on a misrepresentation on the second injury fund questionnaire pursuant to La.R.S. 23:1208.1.

***Assignment of Error Four: Award of Penalties and Attorney Fees***

Louisiana Revised Statutes 23:1201 is the relevant statute in determining whether an employer should be assessed penalties and attorney fees for failure to timely pay indemnity or medical benefits. The statute provides that no penalties or attorney fees shall be assessed "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer ... had no control." La.R.S. 23:1201(F)(2). Further, "[t]o avoid the imposition of penalties and attorney fees for the nonpayment of benefits, the employer has a continuing obligation to investigate, to assemble, and to assess factual information before denying benefits." *Romero v. Northrop-Grumman,* 01-24, pp. 10-11 (La.App. 3

20

Cir. 5/30/01), 787 So.2d 1149, 1156, *writ denied*, 01-1937 (La.10/26/01), 799 So.2d 1144.

> An employer avoids the imposition of penalties and attorney's fees by satisfying its continuing obligation to investigate, assemble, and assess factual information prior to it denying benefits. Furthermore, the decision to award penalties and attorney's fees is factual in nature and will not be reversed on appeal absent manifest error. *Odom* [*v. Kinder Nursing Home*], 956 So.2d at 141–42 (citations omitted). "The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." *Burns v. Interstate Brands Corp.,* 09–705, p. 7 (La.App. 3 Cir. 2/3/10), 30 So.3d 271, 277. *Odom* [*v. Kinder Nursing Home*], 956 So.2d at 141–42 (citations omitted).

*Green v. Nat'l Oilwell Varco*, 10-1041, p.13 (La.App. 3 Cir. 4/27/11), 63 So.3d 354 at 363.

Without stating specifics, St. Genevive generally argues that the WCJ erred in granting penalties and attorney fees in favor of Ms. Cook, "under the "facts and circumstances of this case." On review, we have above found that the conclusions of the WCJ were not manifestly erroneous and that Ms. Cook is entitled to workers' compensation benefits. We have further maintained the WCJ's determination that St. Genevive did not carry its burden of proof required to prevail on either of its defenses, pursuant to La.R.S. 23:1208 and 23:1208.1.

Specific to penalties and attorney fees, the WCJ explained in its oral reasons for ruling that, "An employer's not responsible for the payment of penalties and attorney's (sic) fees unless they've acted indifferently towards the employee or if they had no reasonable facts or the medical information to dispute the claim of the employee."

21

The WCJ further found:

> In this case, the employer had statements from Ms. Aguilar that she was not informed by Ms. Cook that she had injured her back with a wheelchair. Her statement was that Ms. Cook had a stroke, not job related, that Ms. Scott gave a statement and said she thought Ms. Cook was just joking when they lifted that wheelchair. But if they had done a more thorough investigation by obtaining the medical records from Work Kare, they would have seen that Ms. Cook was, in fact, reporting an injury [as] a result of the wheelchair. They didn't produce at trial the full recorded statement of [Noris] Scott, just pointing out to the Court that Ms. Scott thought she was joking, and Ms. Scott admitted that at trial. But at trial, Ms. Scott went on to say, "Well, I thought she was joking at first, but when we got to the hospital, it became evident to me that Ms. Cook was truly in a painful situation," and it no doubt was from this wheelchair incident because nothing else was ever mentioned there.

The Medical Records from Work Kare for Ms. Cook's April 3, 2017 visit were not obtained by St. Genevive until September 14, 2017, some four months after St. Genevive refused her claim for workers' compensation benefits.

The WCJ further discussed St. Genevive's defenses, including La.R.S. 23:1208.1 and found:

> So I find, in light of the fact that the employer did nothing truly to establish a [La.R.S.] 23:1208.1, they didn't establish the presentation of the questionnaire form to Ms. Cook in a through fashion where the employer explained the significance of that document to Ms. Cook. Ms. Cook was a long-time employee with St. Genevive. I don't think she had any thought in her mind when she found that document, whether in a cubicle or on her desk, that this was anything she should be worried about because everything had been going fine up to that point in time at St. Genevive.

> They received no - they have no medical evidence that this new back condition, which is disabling to Ms. Cook, was anything other than what arose from lifting the wheelchair. In their attempts at questioning Dr. Gunderson, he never said this was inevitable as a result of the previous condition, nor did he ever say this produced a substantially greater disability.

> At the time of his deposition [November 14, 2017] they had no basis to continue relying on these defenses, [La.R.S.] 23:1208 or

22

23:1208.1.[4] So I find that there's unreasonable failure to provide Ms. Cook with indemnity benefits and medical benefits.

The WCJ awarded Ms. Cook the out-of-pocket medical expenses presented into evidence for the June 2018 surgery, and assessed a $2,000 penalty against St. Genevive for failure to pay indemnity benefits and a $2,000 penalty for "failure to provide medical benefit coverage to Ms. Cook, pursuant to La. R.S. 1201(F). The WCJ also awarded Ms. Cook $14,000 in attorney fees, pursuant to La.R.S. 23:1201.(J), "with interest to run on these sums in accordance with law."

We find no manifest error in the WCJ's award of penalties and attorney fees.

### *Ms. Cook's Answer to Appeal of St. Genevive*

Ms. Cook answered St. Genevive's appeal of the WCJ's judgment seeking $7,500 in attorney fees for work performed on appeal and additional penalties in the amount of $8,000 pursuant to La.R.S. 23:1201(I) for St. Genevive's arbitrary and unreasonable discontinuance and non-payment of her medical treatment.

Attorney Fees for Work Performed on Appeal

The standard for an award of additional attorney fees on appeal is, "An increase in attorney fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase. *AutoZone*, 103 So.3d at 1279. Having affirmed the judgment of the WCJ in its entirety, we award $7,500 to Ms. Cook for attorney fees for work performed on appeal.

---

[4] The record reflects that St. Genevive filed its amended complaint claiming the defenses pursuant to La.R.S. 23:1208 and 23:1208.1 on November 30, 2017, after taking Dr. Gunderson's deposition on November 14, 2017.

<u>Additional Penalties – Louisiana Revised Statutes 23:1201(I)</u>

In addition to the $4,000 penalties awarded under La.R.S. 23:1201(F),[5] Ms. Cook seeks additional penalties for St. Genevive's failure to pay for any of the treatment received by Ms. Cook at Work Kare, including the post-accident drug screen and the occupational therapy ordered by Dr. Dennie. Although this treatment was authorized by Ms. Aguilar, St. Genevive refused to pay the entire Work Kare bill. Similarly, Ms. Aguilar approved the MRI ordered by Dr. Dennie, but St. Genevive refused to pay for either the MRI or the Red River Consultants radiology bill required to interpret the MRI. Given that failure to pay, despite authorization, Ms. Cook contends that additional penalties are due pursuant to La.R.S. 23:1201(I), which provides in pertinent part:

> I.     Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims.

*See also Mullins v. Concrete & Steel Erectors*, 06-510 (La.App. 3 Cir. 9/27/06), 940 So.2d 803, *writ denied*, 06-2588 (La. 12/15/06), 945 So.2d 698.

---

[5] Louisiana Revised Statutes 23:1201(F) provides, in pertinent part:

> F. Except as otherwise provided in this Chapter, failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.

After review, we leave the WCJ's award of $4,000 in penalties under La.R.S. 23:1201(F) undisturbed. Significantly, the WCJ rendered in globo awards of $2,000 "for failure to pay indemnity," and $2,000 "for failure to provide medical benefit coverage to Ms. Cook[.]" The WCJ chose not to award individual $2,000 awards for each "claim" for medical expenses under La.R.S. 12:1201(F) and instead shaped the penalty for an overall failure to provide the required medical benefit. Further, the WCJ's judgment is silent as to any claim raised by Ms. Cook below regarding a separate penalty under La.R.S. 23:1201(I), thereby constituting a denial of that claim. *See Lowery v. Jena Nursing & Rehab Ctr.*, 14-1106 (La.App. 3 Cir. 12/23/14), 156 So.3d 216.

Given the global nature of the WCJ's award under La.R.S. 23:1201(F), we find no manifest error in the denial of a separate, itemized penalty under La.R.S. 23:1201(I). Neither do we find it appropriate to render a separate penalty for each medical payment denied when the WCJ assessed St. Genevive with a penalty for its overall failure to provide medical expenses, a finding within the WCJ's discretion.

Reduction in Credit Allowed St. Genevive for Wages Paid After March 31, 2017

Ms. Cook also seeks a reduction in the $3,130.00 credit awarded to St. Genevive by the WCJ for wages paid to Ms. Cook after her last workday on March 31, 2017. Although, this issue was contained in Ms. Cook's answer to St Genevive's appeal, it was not briefed, and hence this court may consider abandoned any specification or assignment of error which has not been briefed. Uniform Rules, Courts of Appeal, Rule 2-12.4 and 12-5. *Charles v. Landry*, 09-1161 (La.App. 3 Cir. 3/10/10), 32 So.3d 1164.

25

## CONCLUSION

For the foregoing reasons, we affirm the Workers' Compensation Judge's judgment of December 14, 2018 in its entirety, except to amend the judgment to further award Ms. Cook attorney fees for work done on appeal in the amount of $7,500. All costs of this appeal are assessed to St. Genevive Health Care Services Inc.

**AFFIRMED AS AMENDED AND RENDERED.**